## In re Rocky Run Drainage District.

*May 12—June 6, 1922.*

*Drains: Who are owners of land: Life tenants: Vendees under land contract: Pleading: Amendment.*

1. In a proceeding to organize a drainage district, assessments for benefits which presumably enhance the value of the land should be ratably borne by a life tenant and a remainderman, and the interest of such life tenant, who had joined in the petition, should have been included to determine whether one half of the owners of the land within the proposed district had signed the petition. A vendee under a land contract

In re Rocky Run Drainage District, 177 Wis. 524.

who has made part payment should also be accounted an "owner," his interest being determined by the ratio of paid to unpaid purchase price. *In re Catfish River Drainage District,* 176 Wis. 607, followed.

2. Where the owners of a majority of the acreage in a proposed drainage district have signed the petition, the circuit court has very broad powers in permitting amendments to the petition and additional notice to parties not notified, under secs. 1379—10*f*, 1379—11, and sub. 5 and 6, sec. 1379—14, Stats., and should not dismiss the proceeding for defects which can be cured.

APPEAL from an order of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

*Henry A. Gunderson* of Portage, for the petitioners.

For the respondents there was a brief by *Bogue & Sanderson* of Portage, and oral argument by *David E. Bogue.*

JONES, J. This is an appeal by petitioners from an order of the circuit court for Columbia county refusing to organize certain lands located in the towns of Wyocena and Lowville into a drainage district to be known as the Rocky Run Drainage District.

Owners of lands in the years between 1915 and 1919 signed a petition which in 1920 was filed in the circuit court. There were attached to the petition a blue-print map, blueprint profiles, and a report of the college of agriculture of the University of Wisconsin. Notices of the hearing were given pursuant to an order fixing the time and place of hearing and signed by the judge of the circuit court. At various times other requests were subsequently made by parties to be joined as petitioners. The original petition contained the names of owners but not their addresses. Later an amendment was filed signed by an attorney for petitioners giving such addresses and the names and addresses of mortgagees so far as known to petitioners. Between the filing of the first and last petitions a remonstrance was signed by many owners making objections which will be hereafter mentioned.

At the hearing, and before this court, counsel for remonstrants made many objections, urging (1) that the petition was insufficient in failing to give names and addresses; (2) that the damages and cost of construction would exceed the benefits; (3) it was not signed by the owners of a majority of the acreage; (4) there was fraud in obtaining one of the signatures; (5) the order fixing the time and place of hearing was insufficient; (6) the notices were not properly served, posted, or printed; (7) no guardians'*ad litem* were appointed for minors; and (8) that dry lands were improperly included in the proposed district.

. The opinion of the trial judge gives in an interesting manner part of the history of the proceeding and was in part as follows:

"This proceeding is for the organization of a drainage district. The history of the case is such that if I thought I had any discretion in the matter I should dismiss it for laches of the petitioners and for failure, even at the time of the hearing, to have given prescribed notice to certain mortgagees, the railway company with right of way over land in the district, and the town in which are highways within the district. The petition has been up for hearing no less than four times. At each time but the last the petitioners' counsel procured an adjournment to enable him to fix up his fences. Even after commencement of the last hearing an owner of twenty acres of land involved moved to be joined as a petitioner, if not at the instigation of the original petitioners at least to their advantage. A hearing at any one of the first three times fixed would have clearly resulted in a finding of insufficient acreage. But in view of some of the provisions of the drainage act I feel constrained to refuse dismissal on these grounds.

"The principal provisions depriving the court of discretion are as follows:

"Sec. 1379—10*f*, sub. 5. Failure to serve notice on any party or parties entitled thereto shall not defeat the jurisdiction of the court. Such party may, by a written waiver filed in court or by appearance, waive such notice or may be

required to show cause why he should not be bound by the proceedings."

"Sec. 1379—11, sub. 2. No petition having as many signers as are required . . . shall be declared void, but the court may at any time permit the petition to be amended. . . . All petitions filed *before* the final hearing of a petition shall be considered as filed with the first petition.

"Sec. 1379—14, sub. 5. If the court . . . shall find that the petition has not been sufficiently signed he shall dismiss. . . .

"Sec. 1379—14, sub. 6. But if it shall appear that the petition is signed by the requisite number of landowners, the judge shall so find and shall order all necessary amendments to the petition and appoint three suitable commissioners.

"It was the manifest intention of the legislature in passing this act to make the proceedings absolutely 'fool proof;' to compel the court to let attorneys, 'if at first they did not succeed, to try, try again;' and keep on trying until they remedied all defects in the proceedings that might be pointed out to them. So I feel that it is my duty to determine whether the petition is sufficiently signed, and if I find that it is not, dismiss it, and if I find that it is, order such amendments to the petition or such further notice, if any, by means of orders to show cause, or otherwise as may seem necessary.

"The petitioners do not constitute a majority of the landowners of the district. It is therefore necessary for a sufficient petition that the petitioners own a majority of the acreage within the district. The total acreage is 1,655 acres and it is necessary that 827½ acres be represented. The petitioners claim that they represent 950 acres. If 122.6 of these acres be excepted, the petition falls."

The only express finding of fact made by the court was that the petition for the organization of the district was not signed by a majority of the owners of the land within the proposed district and that the owners of one half of the land within the proposed district had not signed it, and for that reason the petition was dismissed with costs to the remonstrants.

In coming to the conclusion that there was not sufficient acreage the trial court excluded sixty acres referred to as the *Trout* land, for the reason that Mr. Trout had died leaving a widow and infant children and the widow had only a life estate. The court also excluded forty acres referred to as the *Charmley* land. *Charmley* holds the land under a land contract which called for yearly payments and he is in possession. There were also excluded one acre owned by the school district, one acre used as a railroad right of way, and twenty-four acres used by the public as highways. There were no signatures to the petitions relating to the last three tracts.

It is unfortunate that at the hearing the trial court did not have the benefit of the decision in this court of the case of *In re Catfish River D. Dist.* 176 Wis. 607, 187 N. W. 673, which has since been handed down. In that case the rule was adopted that, in proceedings under the drainage statutes, assessments for benefits which permanently enhance the value of land shall be ratably borne by the life tenant and remainderman in proportion to the benefit accruing to each, and that the apportionments, in the absence of provisions otherwise in the statute or the instrument creating the life estate, are divided in proportion to the relative values of the estates. It follows that the interest in the land of *Mrs. Trout* as life tenant should not have been excluded on the ground assigned by the trial court.

In the case above cited it was also held that the vendee under a land contract who has paid part of the purchase price, having an equitable interest in the land, should be counted as an "owner" within the meaning of the statute; that the interest of the vendee is determined by the part of the purchase money paid and that of the vendor by the part unpaid; that each has an interest in the land and each should have a voice in proportion to his interest in the creation of the district.

In re Rocky Run Drainage District, 177 Wis. 524.

Thus it appears that the reasons for excluding the interests of *Mrs. Trout* and *Charmley* were not well founded. If their interests had been included there would have been the requisite amount of acreage to organize the district, unless other lands had been excluded.

It is evident that since the trial judge came to the conclusion that there was not the amount of acreage required by the statute he did not deem it necessary to pass upon the many other objections made by remonstrants. As to these objections there have been no findings of fact or conclusions of law. They have been ably argued in respondents' brief but have not been at all discussed in the brief of appellant. The statutes above quoted show the very broad powers vested in the circuit court to receive amendments as to jurisdictional defects and as to other matters. Undoubtedly the patience of the trial court has been sorely tried by the dilatory manner in which the proceedings have been conducted, but those powers have not yet been exhausted. Although we regret so to do, it seems the proper course to remand the case to the circuit court in order that amendments to the petition may be made if deemed necessary; that guardians *ad litem* to infants may be appointed; that further notices of the proceedings and further proof of service of notices may be given if necessary; that orders to show cause why parties should not be bound may be made if such orders are necessary; and that additional proof may be made concerning the questions involved, including that of the sufficiency of acreage.

*By the Court.*—Order reversed, and cause remanded for further proceedings as indicated in the opinion.