KEWAUNEE, GREEN BAY & WESTERN RAILWAY COMPANY, Appellant, vs. BROWN COUNTY FARM DRAINAGE DISTRICT No. 3, Respondent.

*April 11—October 14, 1924.*

*Drains: Jurisdictional requirements: Costs and benefits: Supplemental tiling as part of cost of system.*

1. ·Although under sec. 88.02, Stats. 1923, the law regulating the organization of drainage districts is to be liberally construed, nevertheless where the statute, in giving such drastic powers as are necessarily involved in such proceedings, also declares certain jurisdictional requirements, those must be substantially followed.   p. 453.

2. Where the report of the chief engineer of the state and that of the state College of Agriculture, filed under sub. (7), sec. 88.06, Stats. 1923, contemplate as an essential element of an adequate drainage system the providing of supplemental tile drains, and the statements in the reports are not disputed, the cost of such tile draining cannot be excluded in determining whether the benefits will exceed the cost. · p. 454.

APPEAL from a judgment of the circuit court for Brown county: HENRY GRAASS, Circuit Judge. *Reversed.*

In August, 1921, under what is now ch. 88, Stats., proceedings were commenced in the county court for the organization of a drainage district comprised of about 3,200 acres of land in the towns of Humboldt and Eaton in said county.

The county drainage board, to whom the matter was referred, made a favorable report, and after a hearing such report was confirmed by the county court and an order made organizing the respondent district, and thereafter on appeal the circuit court affirmed such order.

Seven individuals and the appellant corporation appeared in the county court as remonstrants. The remonstrants owned no lands within the designated boundaries of such district, but were owners of or interested in lands along Ellis creek, into which the waters from such district naturally flowed, ultimately reaching Green Bay.

The lands within the proposed district are mostly flat and marshy and several drainage ditches have been in existence for many years.

The method proposed contemplated the straightening and enlarging of Ellis creek, as now flowing through a considerable portion of the lands, until it reaches the edge of the district at a point about where appellant's track crosses the stream about three and one-half miles above its mouth. From this crossing point down to its mouth it drops about 180 feet, running through a very narrow valley with high banks, and is crossed several times by appellant's track, also running through the valley. It is a conceded fact that in some years the spring freshets flood appellant's tracks at places in this valley, wash away the embankments, and interfere with traffic. Farms belonging to the individual remonstrants are also affected by such freshets.

Appellant offered evidence to the effect that such proposed drainage system would naturally tend to largely increase the volume of the spring floods and necessitate the investment and expense of over $50,000 on its behalf in raising and protecting its roadbed and changing its bridges.

Respondent's testimony was to the contrary and that the effect of such proposed changes would be to lessen the dangers from the accumulation of waters in the district, thereby preventing the ice jams that have heretofore occurred.

The court made its findings of fact in substance to the effect:

That the floods will not be increased;

That no damage will result to remonstrants' property in the Ellis creek valley;

That the benefits will exceed the costs of construction;

That the waters from such district will not exceed the capacity of Ellis creek;

That the public health and welfare will be promoted.

And as conclusions of law, that the drainage district has the right to drain, in the manner proposed, the surface waters from the lands in the district into said creek without incurring thereby any liability to those whose lands are outside of said district and along said creek; also, that even though the natural capacity of the creek be exceeded by such drainage, nevertheless any possible damage thereby to the remonstrant property is *damnum absque injuria;* also, that the estimated cost of supplementary tile drainage in such district is not to be included in estimating the cost of construction.

From the judgment this appeal is taken.

For the appellant there was a brief by *Fairchild, North, Parker & Bie* of Green Bay, and oral argument by *Jerome R. North.*

For the respondent there was a brief by *Cady, Strehlow & Kaftan* of Green Bay, and oral argument by *Robert A. Kaftan.*

The following opinion was filed June 23, 1924:

ESCHWEILER, J.  The margin between the amount of benefits to be obtained and the cost of the work is conceded to be but a narrow one.

It is frankly conceded that if substantial damages to appellant must be included in the construction cost of such drainage under the provisions of ch. 88, Stats. (the Farm Drainage Law), and particularly sub. (4), sec. 88.02, de-

fining the cost of construction as including damages to lands and corporations both within and *without* such drainage, and sec. 88.23, providing for liability of the drainage district for such damages as may result to lands *outside* its boundaries from the work done therein (such damages, however, meaning only such as could be recovered against a natural person for like injury resulting from like work), then such a result would make an excess of costs over benefits and require an abandonment of the plans.

It is further frankly conceded that if, in order to meet the statutory and jurisdictional requirements, tile drainage must be now planned for as a part of the scheme, such a requirement would have the same effect as under the preceding paragraph.

Many interesting questions of law are ably presented by the parties under the first of the two propositions just above stated, but in view of the conclusion which we have reached as to the second one we shall not here consider or dispose of them.

This drainage area exceeding 200 acres, the law requires that prior to the determination by the court as to whether or not the proposed drainage district shall be organized there shall be obtained and filed a report by the chief engineer of the state of Wisconsin, as specified in sub. (7), sec. 88.06, formerly sub. (7), sec. 1368—6, Stats., containing, among other things: "(a) The location, design, feasibility and cost of the proposed outlet drains; (b) a general description of the additional drainage necessary to reclaim the land fully for general agricultural purposes, and the probable cost of the same." With this report there shall be included one from the College of Agriculture of the University on the quality and character of soils and subsoils; a soil map; the present agricultural value of the lands; the kinds of crops to which such lands will be adapted after drainage. The same section of the statute provides that such reports shall be *prima facie* evidence of the facts therein

contained. Such reports were made, filed, and are a part of the record.

By sub. (12), sec. 88.02 (formerly sub. (12), sec. 1368—2), the term "drain" means an open ditch, a *pipe line tile,* levee, pump, or other device for the drainage of water from land. And by sec. 88.29 (formerly sec. 1368—29) :

"The farm drainage law shall be liberally construed to promote the public health, the public welfare, agriculture, horticulture, and mining; and the court shall have an equitable jurisdiction over all proceedings thereunder."

The report of the chief engineer contained the following: "There are 3,200 acres in the drainage, of which approximately 2,000 are wet. . . . On the basis of a little less than eight miles of open ditch, . . . the estimated cost is $26,500." The plan provides for a main ditch on Ellis creek and for seven lateral ditches. Also—

"(b) *Additional drains required.*—The outlet drains as designed will take care of the ordinary floods and give some direct under-drainage, but their chief function is to serve as outlets for lines of four and five-inch tile that will be necessary to complete the drainage of the wet land. A thorough system of tile drainage should be planned and installed on these lands before they can be expected to produce with the greatest profit. In the average soil, these lines of tile should be four feet deep generally and from four to eight rods apart. . . . These lines of small tile will cost about $1.75 a rod for tile and labor. On this basis the cost of the supplementary drainage can be computed."

The report from the College of Agriculture contained the following:

"About two thirds of the marsh is entirely open and used chiefly for pasture and wild hay meadow. . . . Considerable areas have been cultivated with good results in dry years, but with poor results on the average because of the deficient drainage. . . . Thorough tile drainage will make this soil nearly as valuable as the surrounding upland soil. . . .

*Peat* comprises about one third of the wet land in the marsh.
. . . The first step necessary for the proper development of
this peat soil is . . . proper fertilization and cultural prac-
tices. . . . Killing frosts are liable to occur on this land
occasionally during the growing seasons, and this must be
taken into account in selecting crops for such land and in
estimating its value as farm land. . . . The quality of the
soil in this project is such as to warrant the expenditure of
money for the proposed drains and the necessary supple-
mentary drains."

These statements in such reports are, under the statute as
above quoted, made *prima facie* evidence, and none of them
are disputed by evidence or denied by any of the findings.

On behalf of the drainage board and those interested in
the lands within the proposed district is urged the view
which was adopted in the courts below, that as to the supple-
mentary tile drainage mentioned in each of such reports,
such additional and very substantial expense and cost may
be left to the individual landowners to be put in at their
several wish and cost, and need not be considered or in-
cluded in determining whether or not the district can be
properly organized under the law. Although this law, under
its language above quoted, is to be liberally construed, never-
theless, where the statute in giving such drastic powers as
are necessarily involved in such proceedings also declares
certain jurisdictional requirements, those must be substan-
tially followed. *Guenther v. Rutkowski,* 176 Wis. 180, 185
N. W. 639. It is so stated, also, in *Bradley v. Wis. D. Co.*
181 Wis. 601, 603, 195 N. W. 705. Though the power to
amend the proceedings is very broad, as stated in *In re
Rocky Run D. Dist.* 177 Wis. 524, 529, 188 N. W. 493, yet
we find no power granted to the court to disregard or make
optional with individual members elements which are re-
garded as substantial parts going to make a drainage system
as a whole. Furthermore, by sub. (1) (a), sec. 88.08 (for-
merly sub. (1) (a), sec. 1368—8), it is expressly required
that in areas such as here, the board, with the aid of an

engineer, shall "Lay out drains of sufficient depth and capacity to adequately drain the lands proposed to be drained," etc.

We are compelled to the conclusion that as those reports stood before the trial court as a matter of expert evidence, required by law, they must be construed as contemplating, as an essential element of an adequate drainage system, the providing of supplemental tile drains, and without which the drainage as a system would be incomplete, inadequate, and therefore not feasible.

To hold otherwise would justify disregarding other important statutory requirements, would permit the authorizing of the starting of such projects by piecemeal rather than as entireties, and permit placing a present burden on lands for which there would be no equal or adequate benefits. It in effect would be the making by the court of a different plan of improvement than that contemplated by the statute, and such cannot be done. See *In re Jensen* (Minn.) 198 N. W. 455.

With such excluded item of cost for tile draining included within the cost of construction, such costs, it is conceded, are in excess of benefits, and the application to organize this proposed drainage district should for that reason have been denied.

*By the Court.*—Judgment reversed.

A motion for a rehearing was denied, with $25 costs, on October 14, 1924.