MILLER, Respondent, vs. McMANUS, County Treasurer, and others, Appellants.

*October 15—November 11, 1924.*

*Drains: Jurisdiction of supervisors: Failure to file order in time: To assess damages: Correction of errors by court: Petitioner mistaking his remedy.*

1. The failure of a town board of supervisors to file a written order for the construction of a drain within ten days after the final hearing, or to assess damages under sec. 1362, Stats. 1917, results in a loss of jurisdiction. p. 55.
2. Where damages resulted to the lands of the plaintiff because of the construction of a drainage ditch and the supervisors failed to assess any damages, they lost jurisdiction to assess benefits against the lands. *Guenther v. Rutkowski,* 176 Wis. 180, followed. p. 56.
3. The errors in drainage proceedings which the court is authorized to correct by sec. 1367k, Stats. 1917, relate to mere irregularities and to a class of errors which courts of equity customarily exercise jurisdiction to relieve; but the court has no jurisdiction to correct jurisdictional defects. p. 56.
4. Statutes relative to the jurisdiction of a town board of supervisors in drainage proceedings are not merely directory. p. 57.
5. Notwithstanding plaintiff was active in circulating a petition for the construction of a drainage ditch of a certain type, he did not waive his right to maintain an action to recover an assessment paid under protest because upon learning that an order laying out a ditch of a different type had been filed he mistook his remedy and appealed to the county court. p. 58.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

For the appellants *Oak Creek* and its supervisors there was a brief by *Perry & Perry* of Milwaukee, and oral argument by *Charles B. Perry.*

For the respondent the cause was submitted on the brief of *Hoyt, Bender, McIntyre & Hoyt* of Milwaukee.

OWEN, J. This is an action brought by the plaintiff and respondent to recover the amount of a special drainage

assessment, which he paid under protest, as required by the provisions of sec. 75.62, Stats., as a prerequisite of contesting the validity of the tax.   The case was tried before the court without a jury, and from a judgment in favor of the plaintiff the defendants appealed.

It appears that the plaintiff is a property owner in the drainage district in the town of *Oak Creek,* Milwaukee county, Wisconsin, and that he himself was active in the circulation of a petition for the construction of a drainage ditch.   The petition prayed for either a tile drain or open ditch, but specified as proper dimensions for an open ditch a depth of seven feet, a width of six feet at the bottom, and twenty feet at the top.   This petition was filed with the town clerk of *Oak Creek* during the month of April, 1918. On May 8, 1918, the board of supervisors of said town fixed the place, and May 18th as the time, at which said board would meet to decide upon said petition, and gave proper notice of said meeting.   The board met, pursuant to said order and notice, on May 18th, held a partial hearing and adjourned to May 28th, when they orally announced their decision to lay out an open drain.   They filed no written order with the town clerk, however, until October 30, 1918, at which time there was filed in the office of said town clerk a document signed by the members of said board of supervisors, purporting to be an order for the laying out of an open drain through the lands mentioned in the petition, including the plaintiff's land; the dimensions of said drain as ordered being seven feet deep, four feet wide at the bottom, and fourteen feet wide at the top.   In and by said document said supervisors also purported to levy assessments for benefits against the lands benefited for the cost of constructing said drain, the proposed assessment against plaintiff's land being the sum of $929.37.   No finding was ever made by said supervisors, either in said documents or otherwise, as to whether the construction of said drain would promote the public health and welfare, or as to

whether the benefits thereof would exceed the damages and cost of construction, nor were any damages to the land of the plaintiff, or any other person, awarded by said supervisors, for the reason that said supervisors considered the lands used for said ditch as low lands which would be benefited thereby.

Work of constructing said drain was begun about November 18, 1918, and on or about the same day plaintiff observed said work, and received from the town treasurer a notice of assessment made against his land on account of said drain. Until plaintiff received said notice and observed the commencement of said work he had no knowledge that the supervisors had made any written order for the laying out of said drain, or had assessed any benefits against his land, or had failed to allow him any damages on account of the construction of said drain.

On November 21, 1918, plaintiff caused to be served upon said supervisors a notice of appeal to the county court to appoint commissioners for the purpose of reviewing said order of said town board assessing benefits against his land and failing to award any damages in his favor, and upon said appeal commissioners were duly appointed December 23, 1918. Said commissioners thereafter qualified and held a hearing, at which plaintiff appeared in person and by his attorney and introduced evidence, which he offered only in relation to the question of damage to his land and the lack of benefits resulting to him from the construction of said drain. On January 14, 1919, the commissioners filed their decision in writing affirming in all respects the assessments of benefits as stated in said documents signed by said supervisors under date of October 30, 1918.

The trial court filed a very able opinion in deciding the case, in which it was held that the town board lost jurisdiction to make the special assessment, for at least two reasons: first, because the written order laying out the drain was not filed with the town clerk within ten days after the

final hearing on May 28, 1918; and second, because the supervisors failed to assess any damages to plaintiff's land.

There is no doubt that the supervisors lost jurisdiction to levy the special assessment complained of for both reasons stated by the trial court, if not for others. Sec. 1362, Stats. 1917, provided that if the supervisors shall find that the proposed work will promote the public health or will promote the public welfare and that the benefits thereof will exceed the damages and costs of construction they shall within ten days after the final hearing by written order grant the petition or a modification thereof, and as soon as may be after the plans of the proposed work are made and agreed on by them they shall award just damage to each piece of land damaged by the proposed work; and by sec. 1367, Stats. 1917, it was further provided that "Failure of the supervisors for ten days to make the requisite order laying out such drainage or refusing to lay it out shall be deemed a refusal to lay it out." There are similar provisions in the statutes relating to the laying out of highways, and as to such provisions this court has held that "When the time had expired, and no order and award had been filed, the statute stepped in and determined the fact that the application had been refused." *State ex rel. Hewitt v. Graves,* 120 Wis. 607, 98 N. W. 516; *State ex rel. Loehr v. Hanson,* 168 Wis. 497, 501, 170 N. W. 725. The failure of the town board to file its order within ten days after its adjourned meeting on May 28th amounted to a refusal to grant the petition or to lay out the drain, and it had no further jurisdiction in the premises. The order filed with the clerk on the 30th day of October, thereafter, was utterly void.

These same proceedings were before this court in *Guenther v. Rutkowski,* 176 Wis. 180, 185 N. W. 639, and it was there held that the supervisors lost jurisdiction because of their failure to assess damages to plaintiff's land in view of the fact that it appeared that his land was damaged. In

this case the court found that plaintiff's damages, resulting from the construction of the ditch were $215, and upon the authority of the *Guenther Case* it must be held that the supervisors lost jurisdiction to assess benefits against plaintiff's land for that reason.

It is not seriously contended by the appellants that the supervisors did not lose jurisdiction. It is conceded that the *Guenther Case* is conclusive upon that question. However, they seek to avoid the consequences of the *Guenther Case* by force of sec. 1367k, Stats. 1917, which was not called to the attention of the court in the *Guenther Case*. That section provides:

"Whenever upon an appeal from the order of a town board to the county court, or upon any action in circuit court to restrain or set aside the proceedings, or any part thereof in a drainage matter prosecuted under the provisions of sections 1352 to 1367j, inclusive, of the statutes, an error is discovered in any of the proceedings prior to said appeal or action, said court shall exercise equitable jurisdiction therein and correct and cure said error or errors by order and thenceforth progress shall be made in every respect as if there had been no error in the original proceedings."

It will be noted that this section authorizes the court to exercise equitable jurisdiction in the correction of errors. This no doubt has reference to the usual powers exercised by courts of equity in the correction of errors. For instance, if a mistake was made in the written order the court might order it corrected so as to express the real intention of the supervisors. But a court of equity is powerless to correct jurisdictional defects. The purpose of the statute was to save a proceeding from the consequences of mere irregularities as distinguished from jurisdictional defects. To hold otherwise would be to say that matters of jurisdiction might be ignored by the supervisors and such disobedience could be remedied by court order. Such a construction would be equivalent to holding that all the provi-

sions of the statutes relative to the jurisdiction of the supervisors were directory merely, which is contrary to the universal construction of statutes relating to the jurisdiction of administrative bodies. Such was not the purpose of sec. 1367$k$, and the errors which a court is authorized to correct by the terms of that section relate to a class of errors from which courts of equity customarily exercise jurisdiction to relieve. It follows, therefore, that sec. 1367$k$ is impotent to save the situation here presented.

It is further contended that the plaintiff herein should be denied equitable relief by reason of laches and estoppel. Upon this question the case of *Guenther v. Rutkowski,* 176 Wis. 180, 185 N. W. 639, would seem to be conclusive, unless the situation and conduct of the present plaintiff can be distinguished from that of the plaintiff in that action. It is claimed that in the *Guenther Case* the plaintiff did not petition for the construction of the drain, that he was not a moving party in favor of the proceedings, but that he opposed them at all times, while here the plaintiff was active in circulating the petition; that he secured a survey, map, and profile of the area proposed to be drained as well as an itemized statement of the estimated cost of the work, and a report of the college of agriculture, as was then required by law, touching the feasibility of the project, to be filed with said petition. This is true, but it is to be remembered that he at all times urged a tile drain, and at all times insisted that if the drain was to be an open ditch it should be of the dimensions specified in the petition, and that he never expressed satisfaction with an open ditch of the dimensions specified in the order. Upon learning of the order which the town board filed with the town clerk on October 30th he promptly appealed to the county court, as did the plaintiff in the *Guenther Case.* It would appear that the present plaintiff challenged the proceedings as promptly as did the plaintiff in the *Guenther Case,* and, although he mistook his remedy, it must be held here, as it was held

there, that the fact that he mistook his remedy did not operate as a waiver of the right remedy. While we agree with the opinion of the trial court that an inequitable result is reached, it seems to be made imperative by the application of plain legal principles. Nothing short of an arbitrary ruling can withhold from the present plaintiff the remedy granted in the *Guenther Case.* The judgment of the circuit court must be affirmed.

*By the Court.*—So ordered.

DOERFLER, J., took no part.