In re Jefferson County Farm Drainage No. 20: Jefferson County Drainage Board, Respondent, vs. Baneck and others, Appellants.

*May 6—July 3, 1953.*

340

For the appellants there were briefs by *Dakin & Dierker* of Watertown, and oral argument by *Roland F. Dierker*.

For the respondent there was a brief by *Mistele & Smith* of Jefferson, and oral argument by *Lynn H. Smith*.

FAIRCHILD, J.   The drainage law as enacted in chs. 88 and 89, Stats., does not allow the creation of a drainage district piecemeal or by gerrymander. If, after an examination of the lands described in the petition and all other lands that the board believes will be benefited, the project is first organized by creating a district embracing only a portion of a natural watershed, then any later proceedings which seek to add lands directly affected and of the nature of the lands included in the first organization are without sanction of law.

Sec. 89.52, Stats., provides as follows:

"(1) Whenever any lands or corporation outside a drainage district are in fact receiving the benefits of any drain of such district, the commissioners, when their attention is called thereto or any owner of land in such district may report such facts to the court and petition that the benefited lands, describing them, be brought into such district and assessed for the benefits by them received from such drain.

"(2) Upon the filing of such report and petition, the court shall enter an order directing that the owners of such lands be notified of the filing of such report and the contents thereof, and requiring such owners to show cause at a time and place therein fixed, not less than twenty days after such report is filed why their said lands should not be brought into the district and assessed.

"(3) At the time and place fixed for hearing on such report, any such owner may remonstrate against such petition.

"(4) If the court shall be satisfied that such lands or any of them are receiving benefits from any drain, the court shall so find in writing and shall order the benefited lands to be made a part of such district.

"(5) The commissioners shall, after the time for appeal is past, assess benefits and cost of construction against and award of damages to each tract of annexed lands and make a report to the court thereon.

"(6) The court shall fix a time and place of hearing on such report and direct what notice shall be given to the owners of such lands and corporations assessed. Any owner of such land or any corporation affected may file a remonstrance against the confirmation thereof and the issues arising thereon shall be made up as provided by section 89.33 and tried as provided by section 89.07."

At first blush a reading of the statute would seem to indicate that the appellants have no right to claim that the original proceeding was invalid because of failure to give appellants notice in the original proceeding. However, such interpretation would clearly permit a circumvention of the legislative requirement that the owners of a certain fraction of the lands directly affected must petition for the creation of the district.

Sec. 89.19 (2), Stats., reads:

"(2) No petition having as many signers as are required by subsection (1) of this section shall be declared void, but the court may at any time permit the petition to be amended in form and substance to conform to the facts, if the facts justify the organization of a district. All petitions for the organization of the same or substantially the same district filed prior to the final hearing of a petition shall be considered by the court as one petition and as filed with the first petition and all signatures to such petitions shall be counted in determining the jurisdiction of the court."

Sec. 89.19 (1), Stats., provides:

"(1) Whenever a majority of the owners of land within a proposed drainage district who represent one third in area of the lands of said proposed drainage district or whenever

the owner or owners of more than one half of the lands within such district desire to organize a drainage district, provided that no owner being counted for more than 320 acres, such owner or owners may file in the circuit court of any county in which the lands or any part of them are situated a petition setting forth:

"(a) The proposed name of the district.

"(b) The necessity for the proposed work describing it.

"(c) A general description of the location, character, and plans of the proposed drains.

"(d) A general description of the lands intended to be included in the district.

"(e) That the public health or public welfare will be promoted and that the benefits will exceed the damages and costs of construction.

"(f) The names and addresses of the owners and mortgagees of all lands in the district, so far as known to the petitioners.

"(g) A prayer for the organization of a drainage district.

"(h) If the purpose of such petition is the enlargement, repair, or maintenance of a drain, heretofore constructed under any law of this state, said petition shall give a general description of the same with such particulars as the petitioners may deem important."

Sec. 88.05, Stats., provides for the filing of a petition or petitions by "the owner or owners of a majority of such lands or a majority of the owners owning one third in area of such lands or a majority of the county board in which such lands are situated or a majority of the town board or boards of supervisors of the town or towns in which such lands are situated."

If organizers of a district, failing to recognize the true purpose of the law or prompted by some other motive than complying with the strict requirements of the legislation on the subject, knowingly omit from their petition certain lands directly affected, the requirements of a petition are not met; and a later attempt to bring in such lands will result in a piecemeal erection of a drainage district, and the later pro-

ceeding must fail. We therefore construe sec. 89.52, Stats., if it is to be considered in this proceeding at all, as not applying to a situation which constitutes a conscious gerrymander, but only to one where lands were omitted originally unintentionally and it later became apparent that such lands were directly affected.

The jurisdiction of the county court to render the judgment in the manner and form it did is challenged on this appeal. It is fundamental that drainage statutes are in derogation of the common law, and although liberally construed, there still must be a compliance with special requirements; and a district organized piecemeal, or in a fashion described as gerrymandering, cannot stand against the objections of owners of additional land sought to be included by resort to such method.

The petition of the respondent recites that due to the addition of certain lands which have been added to the original drainage and "the extension of laterals for such lands, other lands now lying outside of the drainage area are in fact receiving the benefit of the drain constructed in this drainage and should logically be included in said drainage."

This directs attention to the series of efforts made to establish a drainage district known as Jefferson County Farm Drainage No. 20. It appears that appellants' lands are in an area consisting of 4,336 acres which form a natural watershed with Duck creek as its natural outlet. The farms of the appellants were not included in the original proceeding to organize District No. 20, although they were included in a District No. 13 organized earlier but later abandoned, which will be referred to in another part of the opinion. It also appears that the lands lying between the original boundary of District No. 20 and the farms of appellants were not included. It is apparent that the original proceeding failed to include all lands of a similar nature directly affected by the proposed district; and District No. 20, as now set up under

the various orders of the county court, was not established as an entity.

A review of the steps taken will show the disadvantage of a piecemeal development of a drainage district such as here exists. In 1944 a drainage district was organized which was known as Jefferson County Farm Drainage No. 13; but in 1945, upon petition of a majority of the farmers concerned, District No. 13 was abandoned. In 1947, a group of farmers, including appellants, constructed a private drainage ditch which drained into Duck creek. In 1950, by petition of certain landowners, original Drainage No. 20 was created, embracing only a portion of former Drainage No. 13. Later in 1950 a group of persons whose lands were east of the newly created Drainage No. 20 asked to be included. Their petition was filed in an attempt to comply with sec. 88.11, Stats., and as these petitioners waived their right to notice to which they would be entitled under ch. 88, Stats., their lands were, by order of January 29, 1951, included in Drainage No. 20. By virtue of that order, the northern boundary of the lands thus included lay in the center of sections 27 and 28. None of the owners north of that boundary had joined in the petition to be included in original Drainage No. 20, but in October of 1951, the Jefferson County Drainage Board brought action under sec. 89.52 to compel the inclusion of lands north of the area embraced in the order of January 29, 1951. The owners filed a remonstrance, but by order of the county court dated December 21, 1951, their lands were also included. However, they did not appeal. This second addition extended the boundary line of District No. 20 still farther north. In April, 1952, the Jefferson County Drainage Board brought still another action under sec. 89.52 to include lands lying north of the northern boundary of the second addition. This is the property owned by the appellants.

The serious question and the controlling one, when we leave aside failure of timely and legal notice to appellants in the original proceedings, is: Did the proceedings resorted to by respondent board become an attempt to create a drainage district piecemeal? It is considered that the facts referred to compel the conclusion that the respondent was fully advised that the lands now sought to be included were directly affected and within the area benefited, as were the intervening lands brought in subsequent to the order of January 29, 1951, which proceeding was under sec. 88.11, Stats. At the time of the original proceeding the respondent was well aware of the situation of that land to the north and east of the then proposed District No. 20 and knew of the private drainage ditch constructed in 1947. The engineer for the respondent had served in planning District No. 13 in 1944 and 1945 and also knew of the private ditch.

Chs. 88 and 89, Stats., are both part of the entire drainage law. One seems to be designed to overcome oversights in a proceeding in circuit court. But the rule which requires that a drain be established as an entity in the first instance has not been abrogated entirely.

In his memorandum opinion the learned trial judge recognized the fact that the district had been created as the result of several distinct proceedings by the addition of separate and distinct parcels of land. In reference thereto he said: "It is unfortunate that these proceedings can properly be criticized from the standpoint that it is a project which results in a drainage district created by piecemeal rather than as an entirety, a procedure frowned upon by the court in the case of *Kewaunee, G. B. & W. R. Co. v. Brown County F. D. Dist.* 184 Wis. 448 [199 N. W. 378] ; and if I had been convinced that a 'divide and conquer' theory actuated the Drainage Board I might have been persuaded to deny the petition."

The character of the men forming the respondent board cannot be called in question, but the effect of their acts brings

into existence a constructive fraud which must be viewed as a legal consequence resulting from the evidence as creating valid legal objection to their act. The result of their misunderstanding of the law and the misapprehension of their duties created a set of circumstances which clearly reflects the true nature of the proceedings bringing an unlawful imposition upon appellants. If the law permitted the organization of districts of this nature by adding a tier of farm area or sections of land this year and another a little later, and then more at a still later time, the protection that owners of farms are entitled to against assessments for drainage would be effectually destroyed bit by bit, because the number of owners required for a petition would be reduced and overcome in instalments. The decision below rests on a mistaken judgment of the weight of the evidence and the belief that the drainage district as it existed at the attempted inclusion of the appellants' farms was proper.

It is true that the law is to be liberally construed and the court is to exercise equitable jurisdiction in the correction of errors, but the usual powers exercised by courts of equity in correction of errors is limited to correction of errors so as to express the real intention of the act. The purpose of the statute, sec. 89.03, was to save a proceeding from consequences of mere irregularities. To rule otherwise would be permitting the arbitrary disregard of important standards in matters where drastic powers may be used to give an unfair advantage to one or another of the parties. There have been repeated rejections of projects created by gerrymander and piecemeal efforts. *Miller v. McManus,* 185 Wis. 52, 200 N. W. 684. It was said by Mr. Justice DOERFLER in *In re Catfish River Drainage Dist.* 176 Wis. 607, 611, 187 N. W. 673: "Of course, where it appears that the lands of the supplemental petitioners do not require drainage, and where the signatures of the owners to such supplemental petitions are expressly obtained in order to complete the nec-

essary acreage, and where the proceedings partake of the nature of a gerrymander, the court should deny the petition." See also *In re Lower Baraboo River Drainage Dist.* 199 Wis. 230, 225 N. W. 331. In the *Kewaunee Case, supra,* the court pointed out at page 453 that although the drainage law is to be liberally construed, "nevertheless, where the statute in giving such drastic powers as are necessarily involved in such proceedings also declares certain jurisdictional requirements, those must be substantially followed. *Guenther v. Rutkowski,* 176 Wis. 180, 185 N. W. 639. It is so stated also in *Bradley v. Wisconsin Drainage Co.* 181 Wis. 601, 603, 195 N. W. 705. Though the power to amend the proceedings is very broad, as stated in *In re Rocky Run Drainage Dist.* 177 Wis. 524, 529, 188 N. W. 493, yet we find no power granted to the court to disregard or make optional with individual members elements which are regarded as substantial parts going to make a drainage system as a whole." At page 454 in the *Kewaunee Case, supra,* it is further said : "To hold otherwise would justify disregarding other important statutory requirements, would permit the authorizing of the starting of such projects by piecemeal rather than as entireties, and permit placing a present burden on lands for which there would be no equal or adequate benefits. It in effect would be the making by the court of a different plan of improvement than that contemplated by the statute, and such cannot be done. See *In re Jensen* (Minn.) 198 N. W. 455."

It is interesting to note that the abandoned drainage district mentioned as Drainage No. 13 includes the lands here involved. Drainage No. 20 as originally organized includes part of the original Drainage No. 13. The additions made include other portions of Drainage No. 13. If the boundaries were extended from time to time it would be possible, if the practice were permissible, to re-establish District No. 13 without giving the chance to the owners of the property to be heard jointly in the manner provided by statute.

It is therefore considered that the judgment of the county court must be reversed.

*By the Court.*—Judgment reversed.

GEHL, J. (*dissenting*). It is not questioned that this proceeding was taken under the provisions of sec. 89.52, Stats., and that all of its provisions have been complied with. The trial judge found as a fact that the lands of the objectors are receiving benefits from the drain, and as appears from his memorandum opinion, reluctantly ordered them included in the district. His difficulty appears to have arisen from the fact that he saw no escape from his duty to recognize and apply the provisions of sec. 89.52.

The majority base their determination principally upon their conviction that the purpose of the district throughout the proceedings was to increase the size of the district "piecemeal," and they so conclude in the face of the trial judge's conclusion that he was satisfied that the later developments in the area were not contemplated when the original proceeding was commenced.

He was not convinced, as the majority seem to be, that he should leave the judicial field and invade that of the legislature and for the purposes of this case, at least, repeal the statute.

I am of the opinion that the judgment should be affirmed.

I am authorized to state that Mr. Justice BROADFOOT joins me in this dissent.