In the Matter of BIG BEND
DRAINAGE DISTRICT.

FREMONT SHEEP COMPANY, Robert
Rein, and Beatrice Y. Rein, Appellants
(Remonstrants below),

v.

BIG BEND DRAINAGE DISTRICT,
Appellee (Petitioner below).

No. 3510.

Supreme Court of Wyoming.

Sept. 15, 1966.

F. M. Andrews, Jr., Riverton, for appellants.

Donald Spiker, of Spiker & White, Riverton, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

The Big Bend Drainage District, ostensibly under the provisions of § 41–446, W. S.1957, filed a petition, which as amended, alleged its organization; establishment of its boundaries, contracts by it with the United States concerning the Government's

paying its proper proportionate share of constructing, maintaining, and operating the drainage system for certain Indian lands, which, although within the area to be drained, were held in trust status and because of Federal law were not susceptible of inclusion within the district—even though neither the Indian lands nor the district lands could be separately drained without greatly benefiting the other and each could be most successfully and economically reclaimed and protected by the construction of an integral system of drainage works; the subsequent patenting and later transfer of ownership of portions of said Indian lands to the Fremont Sheep Company and the Reins; and that the lands are now receiving the benefits of the drains of the district by direct or indirect, natural or artificial connection therewith; and prayed that the boundaries of the district as previously established be enlarged to include certain outside lands, including those of the mentioned parties, appellants herein; that such lands be subjected to annual assessments for operation and maintenance; and for such purpose that the assessed benefits of the lands be fixed at the amount of $108.2735 per acre for assessment for operation and maintenance of the district (this amount having been previously established by the terms of the agreement with the United States Government). The appellants remonstrated against the petition, and in answers to the amended petition denied any benefits to their lands, alleged that the petition failed to state a claim upon which relief might be granted, that allegations of the petition failed to report facts showing that appellants' lands were receiving benefits of the district, and that the court was without jurisdiction over the subject matter of the assessment value of appellants' lands; the Fremont Sheep Company also counterclaimed for some $5,000 because of damage occasioned when the purported drains crossing its lands became silted, clogged, and choked with weeds. The district filed an answer to the counterclaim, asserting failure to state a claim upon which relief could be granted and also, in effect,

denying generally. Subsequently, after various other peripheral filings, the district moved for summary judgment with supporting affidavits of a geologist and engineer directed to a delineation of the geological structure and the drainage problems as related to the mentioned lands, together with the affidavit of its attorney as to finances and assessments relating to the lands claimed to be benefited. In opposition to the motion for summary judgment were affidavits of a geologist and the president of the Fremont Sheep Company, both indicating that inadequate maintenance of the drain was having a detrimental effect on appellants' lands. Subsequent to the motion for summary judgment, the Fremont Sheep Company added a second cause of action to its counterclaim, alleging the district claimed an adverse interest in its lands and praying that title be quieted against the district or in the alternative that it have judgment for damage in the amount of $7,000. The district denied generally and moved to dismiss the company's counterclaim and to strike a demand for jury trial, which had been sought on the issue of negligence and damage. The court granted the motions to dismiss the counterclaim and to strike the demand for jury, and by means of summary judgment decreed said lands to be assessable for operation and maintenance beginning in the years said lands were patented by the United States. Remonstrants appealed from the summary judgment and the orders dismissing the counterclaim and granting the motion to strike the demand for jury trial.

Appellants here argue that only one procedure is available for the involuntary inclusion of lands within the assessment rolls of an existing drainage district, that is, § 41–446:

"Whenever any drained lands outside a drainage district are receiving the benefits of the drains of said district, by direct or indirect, natural or artificial connection therewith, the commissioners of said district may report said facts to the court and ask that said lands, describing them,

be brought into said district and assessed for the benefits by them received from the drains, ditches or levees of said district."

together with subsequent sections which prescribe added steps. The gist of their argument on appeal seems to be that if the lands in question had already been included as part of the district the proper action would have been a suit to enforce the existing statutes, but instead the district acted under § 41–446, and having done so, it was obligated to show the benefits to the lands sought to be included but failed to meet this obligation. In that connection, appellants insist that, "The burden of proving that lands sought to be annexed to a district will be benefited by annexation is upon the district," citing 19 C.J. Drains § 27 [28 C.J.S. Drains § 8c(5)]. Appellee responds to this basic argument by saying that the determination of benefits of the district's drain to the appellants' lands, as well as the apportionment of those benefits, was a legislative determination by the commissioners in the exercise of plenary powers granted them in the drainage district statutes, carrying every presumption of regularity and validity and challengeable only for exceeding their powers or for the exercise of discretion in a fraudulent, arbitrary, or capricious manner, and that appellants failed to so challenge the determination.

Although the findings of the trial court embraced certain other matters and among other things alluded to a joint enterprise between the United States Government and the drainage district, growing out of the agreements between the two, it is our view that the propriety of the summary judgment depends upon these mentioned arguments of the litigants. We will, therefore, proceed with a consideration of their merits.

■ Turning initially to the argument of appellants, we seriously doubt the statement that in the situation before us the burden was upon the district in the trial court to prove that the land sought to be annexed would be benefited by the annexation—at least not in the manner in which it is in-timated in the pleadings and argument. In the first place, appellants' encyclopedic citation, showing as its authority for the general pronouncement two Illinois cases dealing with statutes unlike those in Wyoming, is unpersuasive. Moreover, it would seem only logical that under § 41–447, providing, "the court * * * shall require such owners to show cause * * * why their said lands should not be brought into said district and assessed for said benefits", where the trial court is satisfied with the facts presented by the district under the requirements of § 41–446, the burden is then upon the landowners to show why their lands should not be brought into the district and assessed for benefits.

We pass then to the appellee's thesis that the determination of benefits to the lands in question, made at the time of the district's organization and shown by the petition for inclusion, must stand unless properly challenged. Admittedly, the situation here presented is not routine, i. e., the court at the time of the organization of the district in 1921 had made a determination of benefits but because of inhibitions of the Federal law had not included the land within the district's boundaries and confirmed an assessment of benefits.

In the normal instance of a district's seeking to bring in drained land without the district, the commissioners report the "facts" showing that the lands are receiving the benefits of its drains. Delfelder Drainage Dist. v. Givens, 45 Wyo. 123, 16 P.2d 57, 59. Before an annexation can be decreed, the court (after a hearing following service upon the owners of the land sought to be included and any subsequent remonstrance) must find that the lands are receiving benefits. In the Delfelder case, 16 P.2d at 59, this court in discussing § 41–446 said, "It may well be that, where these facts [required by § 41–446] are not fully set forth, the court may properly require that it be done by an amended report before the owners are required to take issue on the facts thus alleged, as directed in * * * [§ 41–448]." Of course, in

the ordinary situation, § 41–446 is the vehicle by which lands unintentionally omitted at the time of the organization of a drainage district may later be brought in when it becomes apparent that such lands are directly affected. In re Jefferson County Farm Drainage, 264 Wis. 339, 59 N.W.2d 655, 657.

Section 41–355, W.S.1957, provides for a petition for organization of a drainage district by a majority of the adult owners of lands within any district of land, who shall represent one-third in area of the lands within said district to be reclaimed or benefited, or the adult owners of more than one-half of the lands within such district. As noted in the Jefferson County Farm Drainage case, 59 N.W.2d at 657, from which jurisdiction our drainage statutes were seemingly taken:

"If organizers of a district, failing to recognize the true purpose of the law or prompted by some other motive than complying with the strict requirements of the legislation on the subject, knowingly omit from their petition certain lands directly affected, the requirements of a petition are not met; and a later attempt to bring in such lands will result in a piecemeal erection of a drainage district, and the later proceeding must fail. * * * *"

■■ Here the appellee points out that: (a) the orders of the court made in the district proceedings of July 28, 1921, November 12, 1921, and December 21, 1923, were made upon reports of the commissioners; (b) in these orders the court found and adjudged that the Indian lands would be benefited by the drainage works and that the benefits to the lands in the district as well as those lands not within the district would exceed damages resulting from construction of the drainage works; and (c) these orders being in rem against the affected lands were therefore res judicata with respect to benefits. The trial court did have before it copies of the contracts with the United States Government concerning its share in the construction costs as well as maintenance and operating costs and attached to the first contract was a description of the Indian lands, including those now owned by appellants. Apparently, the trial court gave weight to this aspect since the judgment says that these lands by the agreements with the Government "were made a part of and became a part of the District." The trial court also found that "by virtue of said agreements, the District drainage works became a joint enterprise between the District and the United States." Whether or not this statement was correct is unessential of determination here since we hold that the organizers were obligated to make a determination of the benefits to the lands in question at the time of such original organization, that such was done in accordance with the statutes with a full disclosure to the court having jurisdiction, and that such determination became a matter of record, binding upon any successors to the title, subject only to a challenge for proper cause.

■ As we interpret our drainage district statutes, especially in the light of the Wisconsin precedent, the questions of benefits, welfare, and necessity, were resolved by the judicial action at the time of the organization, subject to any infirmities which may properly be shown according to the law relating to such matters. In the instant situation since the appellants made no direct contention as to the invalidity of the original orders, those orders must stand. They described the routes and decreed rights of way and easements of the system, which judicial action removes from proper consideration here any question of damage raised by remonstrant, Fremont Sheep Company, in the counterclaim with respect to its second cause of action, that company receiving title to the real property in question subject to such rights of way and easement. Incidentally, it may again be noted that the remonstrants' only assertions against the summary judgment resided in the inadequacy of the drains of the district as presently maintained, with no offer of evidence relating to the basic necessity of including their

lands within the district either by reason of promotion of public health or welfare or the benefits to the lands. Appellee here admits the difficulty it has experienced in the past eleven or twelve years in maintaining its drains since the patenting of the Indian lands and its loss of approximately 23 percent of revenue.

As to the question of damage in the first cause of action of remonstrant company's counterclaim, that is, the improper maintenance of ditches crossing those lands, the appellee here argues that this portion of the counterclaim did not state a claim because of the immunity of the district and implies, although his reference is most ambiguous, that such argument was presented to the trial court. We cannot assume such presentation, and inasmuch as the counterclaim was dismissed for failure to state a claim on which relief could be granted, leave should have been given to amend unless the court determined that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency. Bonanno v. Thomas, 9 Cir., 309 F.2d 320, 322; and see Sidebotham v. Robison, 9 Cir., 216 F.2d 816, 826. The record does not reflect that the trial court made such a determination. As it was well said by Judge Hamley in Bonanno v. Thomas, 9 Cir., 309 F.2d 320, 322, "Where a complaint is dismissed on the ground that it fails to state a claim, the order should also inform the plaintiff of the reason for dismissal so that he can make an intelligent choice as to amending." Accordingly, the order of dismissal as to the first cause of action of the counterclaim is set aside and this aspect of the cause is remanded to the district court with directions to enter an order fairly apprising the Fremont Sheep Company of the ground relied upon for the dismissal and allowing it time to amend the counterclaim.

As to the disposition of the case other than the counterclaim, the pleadings and affidavits presented no genuine issue as to any material fact, and the trial court was therefore correct in issuing summary judgment. However, it did overstep its prerogative in authorizing the assessments on remonstrants' land "beginning in the years said land was patented by the United States." The determination of benefits at the time of the organization of the district did not of itself include the questioned lands therein and did not then carry any right of assessment. Such a right could be effectuated by a proper order of the court upon the application of the district under the provisions of § 41–446, but there is no legislative authority for retroactive effect. The summary judgment should be corrected by proper amendment in this respect and otherwise must be affirmed.

Summary judgment affirmed as modified.

Order of dismissal as to first cause of action of counterclaim set aside and remanded with instructions.