In re Catfish River Drainage District, 176 Wis. 607.

## IN RE CATFISH RIVER DRAINAGE DISTRICT.

*February 10—April 11, 1922.*

*Drainage districts: Creation: Proceedings: Nature: Lands described in petition but not shown on map: Supplemental petitions: Good faith: Lands benefited in part: Interest of executory vendor and vendee: Interest of life tenant: Computation.*

1. Under sec. 1379—11, Stats., lands specifically described in a petition for the organization of a drainage district which was signed by the owner of the lands may be included therein if within the territory constituting the proposed drainage district, though not included in the district as shown by the blue-print map filed with the petition.
2. Lands part of which would be benefited by drainage and other parts of which may be made more accessible, and lands adjoining a proposed district which will be benefited and must be included in the district for the purpose of constructing the drainage ditch, though the area of wet lands therein is small, may be included in the petition for the organization of the district, though only a small portion would be directly benefited, as the preliminary survey need not be as accurate and definite as is contemplated by sec. 1379—18, Stats., when the commissioners make their final report; and the evidence is *held* to justify the order of the court by which the district was organized.
3. Under sub. 6, sec. 1379—11, Stats., supplemental petitions by owners of lands adjoining a proposed drainage district may be filed where the signatures of the owners of one half of the lands in the district have not been obtained to the original petition; but where the lands of the supplemental petitioners do not require drainage, the signatures of the owners thereof being obtained merely to complete the necessary acreage, and the proceedings partaking of the nature of a gerrymander, the petition should be denied.

4. An order of the trial court organizing a drainage district and appointing commissioners pursuant to petitions under sub. 1 (a) to (g) and sub. 6, sec. 1379—11, Stats., will be affirmed, though the creation of the district might not have sprung from the common desire of the landowners to promote the public health or to secure generally the incidental benefits to themselves contemplated by the statute, as indicated by the fact that some who joined in the proceeding subsequently regretted their participation but could not withdraw their signatures.

5. Where a vendee of 220 acres of land, of which 120 acres were included in a proposed district, had paid $8,500 on the purchase price, including $2,500 received from the resale of twenty acres, for which the vendor executed a deed, the trial court properly deducted $2,500 from both the purchase price and total payments and computed the vendee's interest in the remaining 200 acres in the proportion that the adjusted payments and the adjusted purchase price bore to each other, in determining whether the owners of one half of the land included in the district signed the petition; the interests of the vendor and purchaser, both of whom, as holders of the legal and equitable titles respectively, may properly be called "owner" within the drainage statutes, being measured by the parts of the purchase money paid and unpaid.

6. The trial court also properly computed the interest of the owner of a life estate in land included in the district in accordance with her age and the mortality tables; the rule crediting the vendee under a land contract with an interest in the land measured by the part of the purchase money paid being applicable to the owner of the life estate, between whom and the remaindermen the benefits from the drainage should be apportioned ratably.

7. The proceedings under the drainage district law are equitable in their nature and must be liberally construed.

[8. There being sufficient acreage otherwise, it is unnecessary to consider the question whether the lands included in the highways or in the railroad right of way should be credited either in favor of or against the petitioners.]

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

The appeal is from an order organizing certain lands located in sections 4, 5, 6, 7, 8, 17, and 18 of the town of Windsor, and sections 13 and 24 of the town of Vienna, into

a drainage district to be known as the Catfish River Drainage District, and from the order appointing commissioners.

In accordance with the provisions of sec. 1379—11, Stats., the petitioners, desiring to organize a drainage district, filed in the circuit court for Dane county, where the lands are situated, a petition for the organization of such a district and the appointment of commissioners thereof, and an examination of the record discloses that such petition complied with sub. (a) to sub. (g) of sub. 1 of said statute.

Under and pursuant to the provisions of sub. 6, sec. 1379—11, Stats., the following persons, the owners of lands adjoining the proposed district, by supplemental petition asked to be joined as petitioners: Knut K. Johnson, Elmer Hustad, Fred Schuman, and A. A. Linde. Thereupon certain landowners filed a remonstrance in said matter, in and by which they contended that less than one half of the lands in the proposed district were owned by the signers of the petition. An objection was also made to the request of the owners filing supplemental petitions to have their lands included in the petitions. By stipulation of the parties it was agreed that the proposed district, as shown by the map, contained 2,252 acres, and that the owners of lands containing 1,040.465 acres had properly joined in the petition. The lands involved in the total acreage in the district in dispute were the so-called Falk lands, consisting of 37 acres, the Linde lands, 40 acres, the Johnson lands, 120 acres, and the Hustad lands, 31.67 acres, so that the total acreage of lands in dispute amounted to 228.67 acres, which, added to the 2,252 acres, would make the total acreage in the district 2,480.67 acres.

The court in its order included all of the disputed lands above mentioned and appointed commissioners in accordance with the provisions of the statute.

For the appellants there was a brief by *Wylie & Sutherland* of Madison, and oral argument by *Fred M. Wylie.*

*Robert N. Nelson* of Madison, attorney for the petitioners.

*Frank W. Lucas* of Madison, guardian *ad litem.*

Doerfler, J.   The first four assignments of error relied upon by appellants challenge the court's conclusion in including in the petition the Falk lands and the granting of the supplemental petitions of Linde, Hustad, and Johnson.

While the Falk lands were not included in the proposed district as shown by the blue-print map filed with the petition, nevertheless Falk was one of the signers of the original petition and his lands were specifically described therein, and the court therefore held that his lands were properly included.   From the provisions of the drainage act above referred to, the Falk lands could be included in the petition if the lands were within the territory constituting the proposed drainage district or if they adjoined the proposed district. In the latter instance such lands could be included by supplemental petition, to the same effect as though the signer had joined in the original petition.   It therefore appears that the provisions of the statute have been fully complied with, and that it was the intention of Falk and the petitioners to include such lands, and that the court was fully justified in including these lands.

With respect to the Falk, Johnson, Linde, and Hustad lands, it is contended by the appellants that the same are not low lands or such as are contemplated by the drainage act to be included in the district, for the reason, as is contended, that only a small portion of any of these lands would be directly benefited by such drainage, and because the attempt to include such lands was, as is alleged, expressly made for the purpose of furnishing the necessary acreage under the statute, in an effort to enforce the organization of the drainage district for the benefit of those signing the original petition, and to the great detriment of other landowners, such as the remonstrants.

Under the provisions of the statute requiring the preliminary survey, it is evident that it is not contemplated that the same shall in all respects be as accurate and as definite as is contemplated by sec. 1379—18, Stats., when the commissioners make their final report. There is evidence with respect to all of these lands in controversy that a part of them in each instance is included in what is known as wet lands, or lands that would be benefited by drainage. Some of these lands, although high, contain considerable tracts which include what are known as pockets, and where drainage would be of decided benefit. High lands may also be benefited by drainage, though not to the same extent as the low lands, by reason of the fact that such lands may thereby be made more accessible. With respect to the Falk lands, the area of wet lands, from an examination of the map, appears small. However, it is probable that a large portion of the lands adjoining the district, as outlined upon the map, will be greatly benefited by the drainage, and it would appear from the map that it is necessary to include the Falk lands for the purpose of constructing the ditch. In any event, the testimony as it appears from the record is sufficient to justify the court in its order by which the drainage district is organized.

When the original petition was filed the requisite number of signatures had not been obtained, and in order to supply the necessary acreage the supplemental petitions have been procured and filed. A situation like this, however, was clearly contemplated by the legislature in the enactment of the drainage law. The wisdom of enacting such provision rests entirely with the legislature. Of course, where it appears that the lands of the supplemental petitioners do not require drainage, and where the signatures of the owners to such supplemental petitions are expressly obtained in order to complete the necessary acreage, and where the proceedings partake of the nature of a gerrymander, the court should deny the petition. The statute contemplates either

a majority of landowners owning a certain percentage of the land, or the owners of more than one half of the lands within the district, and under the law it is contemplated that the lands included in the proposed district shall be such as will be benefited.

It also appears that some of the owners of lands in the proposed district who have joined in this proceeding have since regretted their participation. Their signatures, however, cannot be withdrawn, and their present attitude is only significant from the viewpoint that the creation of this drainage district did not spring from the common desire of the landowners to promote either the public health or to secure generally the incidental benefit to landowners contemplated by the statute.

In deference to the superior advantages afforded to the trial court in the hearing of the matter, we conclude to affirm the conclusions of the trial court on this branch of the subject, notwithstanding our views as above expressed, under and pursuant to which we would hesitate seriously to grant the petition if the matter were an original proposition before us.

Knut K. Johnson is the vendee of 120 acres of land under a land contract from one Knudson, forty acres of which land were included in the original district and signed for by him in the original petition, and eighty acres of this land so held by him were included in a supplemental petition. Johnson had purchased 220 acres of land on land contract from Knudson for the sum of $26,750, on which land he made payments amounting to $8,500. Two thousand five hundred dollars of the moneys paid on the contract price were moneys received from the sale of twenty acres of said lands, which money Johnson turned over to Knudson, who executed a deed for said twenty acres. The trial court deducted the amount of the payment, viz. $2,500 for the twenty acres, from the purchase price of $26,750, and also from the amount of the payments made by Johnson, viz.

$8,500, and computed his interest in the remaining 200 acres in the proportion that $6,000 bears to $24,250, and in accordance with such computation fixed the interest of Johnson, as an owner in the 120 acres, at 29.688 acres, and thus credited the petitioners with such acreage.

The determination of the trial court on this subject is challenged by the appellants in one of their assignments of error.    In the opinion of the learned trial judge it is said:

"One who has purchased land upon land contract is not the owner of such lands.    The legal title still remains in the vendor.    In this particular his relation to the title is entirely different from the case where a mortgage is given; there the mortgagor retains full legal title subject only to the lien of the mortgage.    But it does not follow that the owner of the equitable title under a land contract is not an 'owner' within the meaning of that term as used in the drainage statutes. 'The word "owner" does not always mean absolute ownership; . . . the purchaser (under land contract), having a mere equitable title, may also be called the owner.    The interest of the purchaser is measured by the part of the purchase money paid, and that of the vendor by the part of the purchase money unpaid, and they may properly both be called the owner.'    *Edwards & McCulloch L. Co. v. Mosher,* 88 Wis. 672, 677, 678, 60 N. W. 264.    The interest of Mr. Johnson in the one hundred acres remaining undeeded is 6,000-24,250, or 24.74 acres.    Under the rule of the *Mosher Case* cited above, Mr. Johnson should be counted as the owner of 24.74 acres of land in the district in determining whether the petition has the requisite number of signatures."

A careful review of the authorities in this state and elsewhere convinces us that the conclusions arrived at by the trial court are correct and should be adopted.

In *Button v. Schroyer,* 5 Wis. 598, 599, in speaking of the relationship of a vendor and vendee in a land contract, this court has held:

"The relation between the parties is analogous to that of equitable mortgagor and mortgagee.    The former has an equity of redemption, the latter has the correlative right of foreclosure."

In *Winslow v. Crowell,* 32 Wis. 639, it is held that where the consideration provided for in the land contract has been fully paid, the vendee becomes the equitable owner of the title, and the vendor the holder of the legal title in trust for him.

In the case of *Edwards & McCulloch L. Co. v. Mosher,* 88 Wis. 672, 677, 60 N. W. 264, it was held that:

"The purchaser, having a mere equitable title, may also be called the owner. The interest of the purchaser is measured by the part of the purchase money paid, and that of the vendor by the part of the purchase money unpaid, and they may properly both be called the owner in respect to the mechanic's lien law as in respect to fire insurance." See, also, *Krakow v. Wille,* 125 Wis. 284, 287, 103 N. W. 1121; *Church v. Smith,* 39 Wis. 492; *Kimball v. Darling,* 32 Wis. 675; *Northrup v. Trask,* 39 Wis. 515; *Superior C. L. Co. v. Nichols,* 81 Wis. 656, 51 N. W. 878.

Other authorities of this court might be cited, but suffice it to say that the holdings in all of the cases seem to be uniform and adhere to the doctrines above referred to.

The proceedings under the drainage district law are equitable in their nature (sub. 1, sec. 1379—10c, Stats.) and shall be liberally construed (sec. 1379—31w).

It therefore appears that the trial court correctly apportioned the interest of the vendee in the Johnson land contract. Such apportionment is not only equitable, but is the only logical basis upon which the interests of both vendor and vendee under the land contract may be credited in a drainage proceeding, and results in a liberal construction of the drainage act, as is contemplated by the statute.

It would be inequitable and unjust to deny the vendee, who has paid a substantial portion of the purchase price of land under a land contract, a voice in the creation of a drainage district, and to require as a prerequisite the co-operation and signature of the vendor; and it would likewise be unjust and inequitable to deny the vendor a voice without the

co-operation of the vendee.    Each, in the sense indicated by the Wisconsin decisions referred to, is an owner; each has an interest in the land, and each should have a voice, in proportion to his interest, in the creation of the district.

Mrs. Farness, under the will of her deceased husband, was the owner of a life estate in 138.5 acres of land in the proposed district, the remainder being owned by her minor children.    Mrs. Farness signed the petition without indicating by such signature whether she signed for herself, or for the remaindermen, or for both.    She testified that in signing the petition it was her intention to represent only her own interest.    Under the statute she had authority to sign for her minor children.    The trial court construed her signature, under the evidence, as binding only her life estate, and it appears that the conclusion of the trial court is correct.    It is not contended by appellants' counsel that Mrs. Farness is not the owner; on the contrary, her ownership of a life interest is conceded.

Under the view we have heretofore taken with respect to the right of a vendee under a land contract to be credited with his interest in the land, we are also constrained to hold that such rule is applicable to the owner of a life estate.

The trial court computed the Farness interest in accordance with the age of Mrs. Farness and the mortality tables, and as the result thereof credited the petitioners with 83.1 acres.    No other method of computation is available, and no reason can be advanced why such method of computation is either unjust or inequitable.    In his opinion the trial judge found:

"The benefit conferred by the drainage here in question will permanently benefit the interests of the remaindermen in the land of the Farness estate.    It is a well established rule that assessments for benefits which permanently enhance the value of land should be ratably borne by the life tenant and remaindermen in proportion to the benefit accruing to each. Such apportionment, in the absence of provisions otherwise

in the statute or the instrument creating the life estate, are divided in proportion to the respective values of their estates. See cases cited in notes: 114 Am. St. Rep. 449; Ann. Cas. 1914B, 820; 10 L. R. A. N. s. 342. That rule was applied to drainage assessments in *Huston v. Tribbetts,* 171 Ill. 547, 49 N. E. 711."

In *Huston v. Tribbetts,* 171 Ill. 547 (49 N. E. 711), at page 550 it is said:

"It is not doubted that appellee, as the owner of the life estate, must pay the annual taxes assessed against the property. They are imposed as a yearly burden for the current benefits derived from the administration of the laws, the protection of property, and the general welfare. Special assessments like this, although levied through the exercise of the taxing power, are not regarded as such ordinary taxes, but as an equivalent for benefits in the increased value of the property. Cooley, Taxation, 416; *Canal Trustees v. Chicago,* 12 Ill. 403; *McLean v. Bloomington,* 106 Ill. 209. . . . The benefits for which ordinary taxes are exacted are realized from year to year, and it is just that the owner of the life estate should pay them, but they rest upon entirely different grounds from a special assessment, where the improvement is a permanent benefit to the property and to the remainder. Where the whole estate is benefited by the discharge of an incumbrance, it is to be apportioned ratably between the tenant for life and the remainderman. 4 Kent, Comm. 74. . . . Upon that principle it is held that the life tenant and remainderman are chargeable with their several portions of special assessments beneficial to each. *Peck v. Sherwood,* 56 N. Y. 615; *Plympton v. Boston Dispensary,* 106 Mass. 546; *Cairns v. Chabert,* 3 Edw. Ch. 312."

Counting the lands included in the original petition, the Falk lands, and the owners of lands who signed the supplemental petitions, and crediting the Johnson and Farness lands as above indicated, the total amount of acreage in favor of the proposed drainage district exceeds one half of the total acreage of the lands in the district, and the order of the circuit court must therefore be affirmed; and

it becomes unnecessary to determine whether the lands included in the highways or in the railroad right of way should be credited either in favor of or against the petitioners.

*By the Court.*—Order affirmed.