## Thomas WALL, Petitioner-Respondent,†

### v.

## Wisconsin DEPARTMENT OF REVENUE, Respondent-Appellant.

Court of Appeals

*No. 89-2017. Oral argument March 8, 1990.—Decided May 23, 1990.*

(Also reported in 458 N.W.2d 814.)

† Petition to review denied.

On behalf of the respondent-appellant, there was a brief by *Donald J. Hanaway,* attorney general, and *Edward S. Marion,* assistant attorney general. There was oral argument by *Edward S. Marion,* assistant attorney general.

On behalf of the petitioner-respondent, there was a brief and oral argument by *Gaar W. Steiner* of *Michael, Best & Friedrich* of Milwaukee.

Before Nettesheim, P.J., Brown and Scott, JJ.

SCOTT, J.   The Department of Revenue appeals from a judgment reversing a decision of the Wisconsin Tax Appeals Commission which had affirmed the department's earlier determination that Thomas Wall underpaid his income taxes for the years 1982–84. The department raises three issues on appeal: (1) whether improper service deprived the circuit court of subject matter jurisdiction; (2) whether for tax purposes record title constitutes legal title; and (3) whether 100% allocation of losses to Thomas lacked "substantial economic effect."

The first issue is waived for failure to timely raise it. As to the second, we conclude that record title does not conclusively establish legal title and so reverse that portion of the judgment. We affirm on the third issue

because the partnership's records do not support Thomas's position.

In 1986, the department issued against Thomas Wall a notice of income tax deficiency totaling $9,038.38 for the years 1982–84. A portion of the alleged underpayment stemmed from the 1981 purchase of some investment property in Columbus, Ohio. It is undisputed that Thomas and his wife, Barbara, intended to purchase the property jointly but, through the seller's mistake, the deed named Barbara as sole owner of the property. Though aware that Thomas's name was not on the deed, the Walls made no effort to change it, believing that as joint obligors on the mortgage note they were also joint owners. In fact, other than the deed, all pertinent documents relating to the sale listed both Thomas and Barbara as joint purchasers.

In each of the years at issue, losses of approximately $10,000 were attributable to the Ohio property; Thomas and Barbara each claimed one-half. The department disallowed Thomas's portion of the claimed losses on the ground that, for tax purposes, record title was determinative of ownership.

The other portion of the alleged underpayment arose from the Walls' ownership of a Waukesha county horse farm ("Harmony Farm") purchased in 1983. After purchase, the Walls entered into a partnership agreement with their son Steven. The agreement provided that each partner was to contribute $500 as initial capital, and that the partners:

> shall contribute any additional capital deemed necessary for carrying on the business and to the extent such capital contributions are unequal, the capital account records shall reflect any such capital contributions.

5

In addition, the agreement allocated gains and losses as follows:

> The partners shall be entitled to the net profits or shall share losses of the partnership in equal shares or as agreed . . . .. Unless otherwise agreed, all profits shall be allocated to Steven and all losses to Thomas and all losses shall be charged against the partners [sic] capital account.

In each of the relevant years, Thomas, a physician, earned an average of $155,000, while Barbara earned less than $25,000. In 1983, Harmony Farm showed losses of nearly $51,000; in 1984, nearly $68,000. All were claimed by Thomas. The department ruled that Thomas was entitled to claim only one-half of those losses, a proportion equal to his ownership interest in the partnership.

Thomas petitioned the department for redetermination of the amount allegedly due. The petition was denied and the Wisconsin Tax Appeals Commission affirmed. The circuit court reversed, holding that the Walls jointly owned the Ohio property and that, as to Harmony Farm, the agreed-upon allocation of profits and losses had substantial economic effect, *i.e.,* that it accurately reflected economic reality. The department appeals.

### SUBJECT MATTER JURISDICTION/COMPETENCY TO PROCEED

The department first argues that the circuit court lacked subject matter jurisdiction because Thomas improperly served his petition for review upon the department and the commission by regular mail rather than by certified mail or in person. *See* sec. 227.53(1)(a)1, Stats. Noting the timely service and lack of any resultant prejudice, the court held that there was

substantial compliance with the statute and denied the department's motion to dismiss.

The department urges this court to rule that failure to strictly comply with the statute deprives the circuit court of subject matter jurisdiction. Because the department did not timely object to any defect in service, and because it does not now claim lack of notice or prejudice, we need not address the issue beyond briefly observing that the question is more precisely framed as one of competency to proceed rather than subject matter jurisdiction. *See Mueller v. Brunn,* 105 Wis. 2d 171, 176-77, 313 N.W.2d 790, 792-93 (1982).

No circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever. *Id.* at 176, 313 N.W.2d at 792. A circuit court nevertheless may lack competency to exercise its jurisdiction because the state has not conferred upon it the power to do so. *Id.* at 177, 313 N.W.2d at 793. In such instances, the court is not *without* jurisdiction; rather, its jurisdiction has not been properly invoked.

Here, the department submitted to the circuit court's jurisdiction by filing a "Notice of Appearance." The department did not allege in it any jurisdictional objections, but first raised the issue four months later in a motion to dismiss. Failure to timely object to the court's competency to proceed constitutes a waiver of that objection. *See In re G.L.K.,* 153 Wis. 2d 245, 248, 450 N.W.2d 498, 499 (Ct. App. 1989).

## LEGAL TITLE

The department next contends that since Barbara held sole record title to the Ohio property, she also holds

7

sole legal title and, therefore, is solely entitled to claim the property's associated losses. Thomas responds that legal title is not determined by record title alone, but by the parties' intent.

The parties agree that legal ownership is a question of law, but disagree as to our standard of review. The department contends that, for tax purposes, the commission has long held bare legal title to be dispositive of ownership. It therefore urges that we give deference to the commission's expertise. *See Wisconsin Dep't of Revenue v. A.O. Smith Harvestore Prods., Inc.,* 72 Wis. 2d 60, 65–66, 240 N.W.2d 357, 359 (1976).

Thomas, by contrast, contends *de novo* review is more appropriate because legal ownership is a question of general law, not one particular to tax law. *See id.* at 66, 240 N.W.2d at 359. He also contends that this court may reject the commission's consistent interpretation of legal title if it is contrary to law. *See Dairyland Harvestore, Inc. v. Wisconsin Dep't of Revenue,* 151 Wis. 2d 799, 802, 447 N.W.2d 56, 57 (Ct. App. 1989). We agree.

Record title does not necessarily equate with ownership. *See Mitchell Aero, Inc. v. City of Milwaukee,* 42 Wis. 2d 656, 660, 168 N.W.2d 183, 184 (1969); *see also Commissioner of Internal Revenue v. Bollinger,* 485 U.S. 340, 345 (1988) (affirming that a corporation holding title to property as agent for a partnership, is not, for tax purposes, the owner; the partnership is). Ownership means "something substantially more in the way of enjoyment or the possession of other indicia of ownership than bare or paper title." *Mitchell Aero,* 42 Wis. 2d at 660, 168 N.W.2d at 184.

*Beneficial* ownership, therefore, not mere technical title, is determinative. *Id.; see also Northwestern Tele. Co. v. Tax Comm'n,* 212 Wis. 219, 225, 248 N.W. 164, 166 (1933) (stating that "[i]t matters not so much where

8

the title to the property is from which the income accrues; the test is control over that which is taxed"). From this we conclude that an intent contrary to the document of title, if clearly expressed, may negate the wording of the title.

■

The department concedes that Barbara and Thomas intended to own the property jointly and that all other documents necessary to the sale reflect that intent. The department also concedes that it was the seller's error which caused Barbara's name alone to appear on the deed. Moreover, the department offers no compelling authority for its contention that we be confined to record title in determining legal ownership. To adopt the department's position would run counter to established law that even an unrecorded conveyance is fully effective between the parties. *State v. Barkdoll,* 99 Wis. 2d 163, 167, 298 N.W.2d 539, 541 (1980). Consequently, we affirm the circuit court's determination that Thomas was eligible to claim a portion of the losses associated with the Ohio property.[1]

## SUBSTANTIAL ECONOMIC EFFECT

The department's final argument on appeal is that losses attributable to Harmony Farm must be allocated in proportion to Thomas's ownership interest because to allocate in accordance with the partnership agreement

[1]The department argues at some length that the commission has no power to reform the deed and that, in any case, reformation is not an available remedy here. Having determined that Thomas properly may claim a portion of the losses attributed to the Ohio property, however, we need not reach that issue. Nor do we interpret Thomas's brief as requesting such a remedy.

lacks "substantial economic effect" within the meaning of I.R.C. sec. 704(b). We agree.

Here, too, the parties concur that this question is one of law and, again, urge upon us different standards of review. We agree with the department that in general we owe deference, though not controlling weight, to the commission's expertise in this specialized area. *See A.O. Smith,* 72 Wis. 2d at 65–66, 240 N.W.2d at 359. That expertise notwithstanding, our review must here be *de novo* because we are presented no evidence of a long-continued interpretation by the commission of "substantial economic effect." *See Drivers Local No. 695 v. LIRC,* 154 Wis. 2d 75, 82–83, 452 N.W.2d 368, 371–72 (1990).

In determining the allocation of a partner's share of profits and losses, Wisconsin law follows federal. *See* sec. 71.05(1)(e), Stats. (1983). I.R.C. sec. 704(a) generally provides that a partner's share shall be determined by the partnership agreement. The only major limitation placed upon that general rule is that allocations must conform to a bona fide business purpose and not be used for tax avoidance purposes. *Hamilton v. United States,* 687 F.2d 408, 413 (Ct. Cl. 1982). This limitation is necessary to prevent allocation of income and losses within the partnership on the basis of who has the lowest marginal tax cost on income received or who has the highest marginal tax benefit for losses and deductions taken. *Id.* Thus, the agreed-upon allocation will be disregarded if it lacks "substantial economic effect." I.R.C. sec. 704(b)(2).

"Substantial economic effect" means that the allocation must be consistent with economic reality, and must reflect the actual division of income or loss among

10

the partners when viewed in light of economic, rather than tax, consequences. *Goldfine v. Commissioner,* 80 T.C. 843, 850 (1983).

The department argues that Barbara's contributions to the partnership strip the agreement of substantial economic effect. It contends that while many of the expenses were paid from joint accounts and from Barbara's individual account, Barbara in effect paid 50% of the expenses, yet her capital account did not reflect these contributions. The department thus concludes that Barbara's contributions entitle her to claim 50% of the losses.

Thomas, on the other hand, argues that since the various accounts were almost entirely funded from his income, regardless of who signed the checks, he paid the bills and therefore merits full deduction of the losses.

The petitioner bears the burden of proving that the allocation to him under the partnership agreement has substantial economic effect. *Ogden v. Commissioner of Internal Revenue,* 788 F.2d 252, 261 (5th Cir. 1986). Thomas has not carried that burden.

Here, the commission made numerous findings of fact supporting its conclusion that Thomas is not entitled to claim 100% of the partnership losses. Those findings will be upheld if sustained by credible and substantial evidence of record. *Yunker v. LIRC,* 115 Wis. 2d 525, 529, 341 N.W.2d 703, 705 (Ct. App. 1983).

Among the commission's findings were that, although Barbara made capital contributions to the partnership, the partners' capital accounts did not reflect them. The Walls purchased the farm on land contract, with Thomas and Barbara equally obligated. When

11

they later contributed the land to the partnership, Barbara's capital contribution was equal to Thomas's and her capital account should have so reflected. It did not.

Similarly, the monetary contributions made from the parties' joint accounts should have been shown in Barbara's capital account because, even though the money may have come primarily from Thomas's income as a surgeon, absent clear and convincing evidence of a contrary intent, a joint account belongs equally to both parties. Sec. 705.03(1), Stats. Both partners' capital accounts should have been credited; only Thomas's was.

In addition, Barbara received no credit for contributions made to the partnership from her individual account. Even if most of those funds, too, came from Thomas, once deposited they were legally hers.

The commission's findings that the partnership agreement lacked substantial economic effect are supported by credible and substantial evidence. They are not incredible as a matter of law. Consequently, we reverse this portion of the circuit court's determination.

Costs are denied to both parties.

*By the Court.*—Judgment affirmed in part and reversed in part.