CITY OF MILWAUKEE, Plaintiff-Respondent,

v.

Martin J. GREENBERG, Defendant-Appellant-Petitioner,

Lawrence EATON, Defendant.

Supreme Court

*No. 90-0088. Submitted on briefs May 30, 1991.—Decided June 25, 1991.*

(Also reported in 471 N.W.2d 33.)

30

For the defendant-appellant-petitioner there was a brief by *Joe A. Goldberger* and *Martin J. Greenberg & Associates,* Milwaukee.

For the plaintiff-respondent there was a brief by *Beverly A. Temple,* assistant city attorney, with whom on the brief was *Grant F. Langley,* city attorney.

HEFFERNAN, CHIEF JUSTICE. This is a review of a published court of appeals decision[1] affirming a summary judgment of the circuit court for Milwaukee county, William J. Haese, circuit judge, which found Martin J. Greenberg personally liable to the City of Milwaukee for costs incurred in razing property which Greenberg had sold to Lawrence Eaton under a land contract. We reverse and remand.

The single issue before this court is whether the vendor of real property under a land contract continues to "own" the property so as to be personally liable for the cost of razing that property pursuant to sec. 74.58, Stats. 1985-86[2] and sec. 66.05, Stats. Both the circuit court

---

[1]*City of Milwaukee v. Greenberg,* 157 Wis. 2d 326, 459 N.W.2d 588 (Ct. App. 1990).

[2]Chapter 74 was repealed and recreated by 1987 Act 378, eff. January 1, 1989. Section 74.58 has been renumbered to sec. 74.53.

and court of appeals ruled that Greenberg was such an owner, because a vendor retains legal title to the property.

Because under well established legal principles in Wisconsin, a vendor transfers all equitable ownership rights to the vendee at the time the parties enter into a land contract, the courts below erred as a matter of law in finding Greenberg a property owner under the relevant statutes. Accordingly, we reverse the court of appeals decision affirming the circuit court's grant of summary judgment.

The pertinent facts are undisputed. On September 1, 1985, Greenberg sold the property located at 3106 West Lisbon Avenue in the City of Milwaukee to Eaton on a land contract.

Over two years later, the City of Milwaukee on October 30, 1987, having determined that a dwelling on the property was unfit for further occupancy or use, issued an "Order to Raze and Remove Building" pursuant to sec. 66.05, Stats. The order, issued to "Owners and Lienholders of Record," was served on both Eaton and Greenberg.

The order stated that the record owners and lienholders had thirty days to raze and remove the building from the premises or the city would arrange to do so itself and the costs would constitute a lien on the property and be assessed and collected as a special tax or be collected personally. When no one complied with the order, the city arranged to have the dwelling razed on June 22, 1988.

The city filed suit against Greenberg and Eaton on August 24, 1988, to recover the costs. The complaint alleged that, pursuant to sec. 74.58,[3] Greenberg and

---

[3] **74.58 Personal liability for delinquent taxes and other costs. (1)** In this section:

Eaton were personally liable for the razing fee, which amounted to $3,905. Greenberg denied liability in his answer and affirmatively alleged that, as a vendor under a land contract, he was not the owner of the property.

A default judgment was taken against Eaton, the land contract vendee. Pursuant to an agreement between the city and Greenberg, the issue whether Greenberg as the vendor was personally liable was submitted to the

(a) "City" means a city authorized by law to collect and sell its own taxes.

(b) "Property owner" means:

1. Any person who owns real property on which real estate taxes or special assessments are delinquent during the period to which the delinquency applies.

2. Any person who owns real property that is razed by a city under s. 66.05(2), (5) or (8)(b).

3. Any person who owns real property on which an excavation is located that is filed by a city under s. 66.05(6).

4. Any person who owns real property on which a public nuisance is abated under s. 823.04 or 823.22.

(2) A 1st class city may proceed against any real property, the property owner or both to collect delinquent real estate taxes and other costs.

(3)(a) A city may bring a civil action against a property owner to recover any of the following costs:

1. Delinquent real estate taxes and special assessments. A property owner is personally liable for the payment of delinquent real estate taxes and special assessments to the extent that the delinquency applies to taxes and assessments owed for the period during which the property owner owned the property.

2. The cost of razing property incurred under s. 66.05(2), (5) or (8)(b).

3. The cost of filling an excavation incurred under s. 66.05(6).

4. The cost of abating a public nuisance under s. 823.04 or 823.22.

(b) If real property is owned simultaneously by more than one person, the owners are jointly and severally liable for the payment of these costs, subject to this section.

(4) If a city proceeds against both the real property and the property owner to collect these costs, the city may not recover more than the amount owed, plus applicable interest and penalties.

circuit court for summary judgment on January 25, 1989. In support of its motion, the city only asserted by way of affidavit that the property was transferred under a recorded land contract. A copy of the contract itself was not submitted to the court, and none of its express provisions were cited.

The circuit court found that there were no issues of fact and ruled as a matter of law that Greenberg, as a land contract vendor holding legal title to the property, was jointly and severally liable with the vendee for the cost of razing the dwelling.

The court of appeals affirmed the circuit court's summary judgment, concluding that a vendor's interest in property conveyed by land contract, while minor in comparison to the vendee's interest, is sufficient to constitute ownership under the relevant statutes.[4]

We accepted Greenberg's petition for review and reverse the court of appeals decision and remand to the circuit court for entry of summary judgment against the City of Milwaukee, dismissing the complaint against Martin J. Greenberg.

In reviewing a grant of summary judgment under sec. 802.08, Stats., we are required to apply the same standards as applied by the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). The parties do not contend there are any issues of fact but only dispute whether a vendor continues to

---

[4]*Greenberg,* 157 Wis. 2d at 330. It should be noted that the court of appeals made its ruling based on the provisions of sec. 74.53. While the statutory language relevant to the determination of this case is apparently the same in the recreated statute effective January 1, 1989, our analysis is confined to the express provisions of sec. 74.58 applicable at the time the city filed its complaint on August 24, 1988.

"own" property conveyed by a land contract so as to be personally liable for the costs of razing that property pursuant to sec. 74.58(3)(a)2. The interpretation of a statute is a question of law which this court decides without deference to the determination of either the circuit court or the court of appeals. *Tobler v. Door County,* 158 Wis. 2d 19, 21, 461 N.W.2d 775 (1990).

Whether Greenberg is a "person who owns real property that is razed by a city under sec. 66.05(2)" (sec. 74.58(1)(b)2, Stats.), is not readily determinable from the face of the statute. This court has long recognized that the term "own" is a general expression used by the legislature "to describe a great variety of interests, and may vary in significance according to context and subject matter." *Merrill Railway & Lighting Co. v. Merrill,* 119 Wis. 249, 254, 96 N.W. 686 (1903). *Black's Law Dictionary* (6th ed. 1990), p. 1105 (term "owner" is a "nomen generalissimum"). "Own" is often used in statutes "to characterize an interest less than absolute ownership." *United States National Bank v. Lake Superior Terminal & Transfer Co.,* 170 Wis. 539, 541, 174 N.W. 923 (1920). *See generally* 63A Am. Jur. 2d, *Property,* secs. 31–33, pp. 261–63 (1984); 1 Restatement of the Law of Property, sec. 10, p. 25 (1936).

It is equally well established, however, that ownership should not be equated with possession of legal title. In *Mitchell Aero, Inc., v. Milwaukee,* 42 Wis. 2d 656, 662, 168 N.W.2d 183 (1969), for example, this court, in determining whether a person "owned" property under a tax exemption statute, explained:

> Ownership is often referred to in legal philosophy as a bundle of sticks or rights and one or more of the sticks may be separated from the bundle and the

bundle will still be considered ownership. What combination of rights less than the whole bundle will constitute ownership is a question which must be determined in each case in the context of the purpose of the determination. In this case for [tax] exemption one needs more than the title stick to constitute ownership.

The task before us, therefore, is two-fold. First, we must determine from general legal principles pertaining to land contracts which "sticks or rights" a vendor retains. Second, we must examine the scope, history, and context of secs. 74.58 and 66.05, Stats., to determine whether the legislature intended that a land contract vendor such as Greenberg be considered a "property owner" for purposes of imposing personal liability for razing costs.

■ The City of Milwaukee and Greenberg both properly recognize Wisconsin's longstanding principles of land contract law. The vendor and vendee in a land contract have separate rights and duties due to the principle of "equitable conversion" which generally governs the sale of real property. *Kallenbach v. Lake Publications, Inc.,* 30 Wis. 2d 647, 651, 142 N.W.2d 212 (1966); *see generally* Church, *Equitable Conversion in Wisconsin,* 1970 Wis. L. Rev. 404.

■ This doctrine is based on the premise that "equity treats that as being done which should be done." 8A *Thompson on Real Property,* sec. 4447, pp. 273–74 (1963). Accordingly, as cogently stated by Pomeroy:

> By the terms of the contract the land ought to be conveyed to the vendee, and the purchase price ought to be transferred to the vendor; equity therefore regards these as done: the vendee as having acquired

the property in the land, and the vendor as having acquired the property in the price. The vendee is looked upon and treated as *the owner of the land;* . . . although the vendor remains owner of the legal estate, he holds it as a trustee for the vendee, to whom all the beneficial interest has passed, having a lien on the land, even if in possession of the vendee, as security for any unpaid portion of the purchase-money.[1a] The consequences of this doctrine are all followed out. As the vendee has acquired the full equitable estate,—although still wanting the confirmation of the legal title for purposes of security against third persons,—he may convey or encumber it; may devise it by will; on his death intestate, it descends to his heirs, and not to his administrators; . . . in short, all the incidents of a real ownership belong to it. As the vendor's legal estate is held by him on a naked trust for the vendee, this trust, impressed upon the land, follows it in the hands of other persons who may succeed to his legal title,—his heirs and his grantees, who take with notice of the vendee's equitable right. (Footnote omitted.)

*Pomeroy's Equity Jurisprudence,* sec. 368, pp. 686–87 (4th ed. 1918). *See also* W. Walsh, *A Treatise on Equity,* sec. 86, p. 415 (1930).

As early as 1855, this court applied these equitable principles to determine the relation between the parties to an ordinary land contract. *Button v. Schroyer,* 5 Wis. 598, 598–99 (1855). Even though the vendor holds legal title to the property, because "the vendee must be regarded as the real owner," we have held that the vendee is liable for taxes assessed on the property after taking possession under a land contract. *Williamson v. Neeves,* 94 Wis. 656, 665, 69 N.W. 806 (1897); *see also*

37

*Ritchie v. Green Bay,* 215 Wis. 433, 437, 254 N.W. 113 (1934).

Furthermore, because only the vendee has full rights over the land from the date of the contract, we have held that the vendor merely "has an interest in personalty equivalent to a mortgagee's interest" such that a vendor's judgment creditors cannot levy against the property. *Mueller v. Novelty Dye Works,* 273 Wis. 501, 506–07, 78 N.W.2d 881 (1956); *Estate of Fischer,* 22 Wis. 2d 637, 642, 126 N.W.2d 596 (1964). Conversely, because the vendor's lien on the property arises at the time of contracting (with the retention of legal title serving as security), any lien interests of the vendee's creditors arising after the land contract date are considered subordinate to the vendor's. *Rees v. Ludington,* 13 Wis. 308 (*276), 314–15 (*282) (1860).

While the vendor's interests have been likened to those of a mortgagee, the two are not identical. Because Wisconsin adheres to the "lien theory" of mortgages, we have recognized that a mortgagee, unlike a land contract vendor, does not hold legal title to mortgaged property and that a "mortgagor retains full ownership in the property, which consists of equitable and legal title." *Glover v. Marine Bank of Beaver Dam,* 117 Wis. 2d 684, 691–92, 345 N.W.2d 449 (1984); sec. 708.01, Stats.[5] Furthermore, the remedies available to a seller upon the buyer's default under a land contract are different from the remedies available to a mortgagee. The land contract vendor has the significant remedy of "strict foreclosure" whereby the vendor can get the land back with no redemption rights inuring to the defaulting vendee. *Kal-*

---

[5] **708.01 Effect of mortgage.** A mortgage on real property creates a lien on the property mortgaged; except for the lien, the mortgagor retains the interest he had at the time of mortgage until that interest is divested by some later act.

*lenbach,* 30 Wis. 2d at 652. Strict foreclosure is not available when a mortgage is involved. J. MacDonald & W. Rauschenbusch, *Wisconsin Real Estate Law,* sec. 8.06, p. 8–6 (1989).

In light of the foregoing legal principles, it is evident that, to the extent the property was conveyed to Eaton under a standard land contract, Greenberg did not retain any ownership "sticks or rights" other than the bare legal title. The bundle was basically transferred to Eaton. Notwithstanding the clarity of these governing equitable rules, however, this court historically has found the question of whether a land contract vendor or vendee "owns" property under a statute to be troublesome. Because under the equitable conversion doctrine the vendor can be characterized as having the legal, and the vendee the equitable, title, we have stated on several occasions over the years that "there may be a measure of ownership in each." *Evans-Lee Co. v. Hoton,* 190 Wis. 207, 211, 208 N.W. 872 (1926).

In determining that a lien arising after a land contract sale attached to the vendor's interest in the property, for example, this court in *Edwards & McCulloch Lumber Co. v. Mosher,* 88 Wis. 672, 60 N.W. 264 (1894), found the vendor to be an "owner" of real property under the mechanic's lien statute. While the provisions of that statute were unusual,[6] *Mosher* did strongly suggest that

---

[6]Under sec. 3314 as affected by ch. 349, Laws of 1885 (*see* 1889 Stats.), a mechanic's lien would attach "upon the real property of any person on whose premises such improvements are made, such owner having knowledge thereof and consenting thereto." Because the vendor in *Mosher* placed a requirement in the land contract that the vendee erect a dwelling house on the property (from which the mechanic's lien arose), it is arguable that the statute did not depend on an initial finding of any vendor

a vendor could be considered a co-owner of property conveyed under a land contract whose interest was measurable by the part of the purchase money unpaid. *Id.* at 677–78. Quoting the lucid opinion of the trial court, however, Justice Winslow dissented from the decision in *Mosher.* Because the vendor had a lien on the land which was merely a personal property claim, Justice Winslow concluded that the mechanic's lien was subordinate to the vendor's. *Id.* at 679–80.

This court also suggested in *In re Catfish River Drainage District,* 176 Wis. 607, 187 N.W. 673 (1922), that a land contract vendor would be an "owner" under the relevant drainage district statute. According to sec. 1379–11, Stats. 1921, the owners of land within a proposed district had the right to petition for the creation of such a district. Following the principles set forth by the majority opinion in *Mosher,* this court ruled that the land contract vendee, like the vendor, had a voice in the district's creation, because he was an owner to the extent of the purchase money paid. 176 Wis. at 612–15. The court concluded that "[e]ach, in the sense indicated by the Wisconsin decisions referred to, is an owner; each has an interest in the land . . .." *Id.* at 615.[7]

Subsequent to these aberrant decisions, this court has on several occasions expressly or implicitly found a land contract vendor not to be an owner under the rele-

---

"ownership." 88 Wis. at 675–77. An equally reasonable construction of that statutory provision, however, is that a person must have consented to the improvements on the property, *in addition* to being independently considered an owner, before a lien attached to the real property of the owner.

[7] A pro-rata determination of vendee ownership under the drainage district statute was also employed by this court in *In re Rocky Run Drainage District,* 177 Wis. 524, 527–28, 188 N.W. 493 (1922).

vant statutory provisions. In *Freimann v. Cumming,* 185 Wis. 88, 200 N.W. 662 (1924), we determined that a vendor does not have "the right to present possession or present control or dominion" over the premises to be an "owner" under Wisconsin's safe place statute. *Id.* at 91.[8]

In *Mueller v. Novelty Dye Works, supra,* 273 Wis. 501, this court held that real estate conveyed under a land contract was not "real property" of the vendor and accordingly a statutory judgment lien could not attach to the vendor's interest. 273 Wis. at 507. The vendor was not considered to have any ownership interest in the property but only a lien as security for the unpaid purchase balance. Consistent with the rationale of *Mueller,* the court held the land contract vendee to be an "owner" of tax exempt property in *Ritchie v. Green Bay,* 215 Wis. at 437, because, as between the vendee and the vendor, the vendee assumes all the burdens of ownership. Under a long line of statutory tax cases, Wisconsin courts have consistently considered the owner to be the party which has the beneficial interest in the property and not the party which merely has bare legal title thereto. *See, e.g., American Motors Corp. v. Kenosha,* 274 Wis. 315, 319–20, 80 N.W.2d 363 (1957), *aff'd* 356 U.S. 21 (1958); *Wall v. Department of Revenue,* 157 Wis. 2d 1, 8, 458 N.W.2d 814 (Ct. App. 1990) (review denied).

Having set forth the applicable land contract principles and Wisconsin decisions determining whether a vendor or vendee is an owner under particular statutes, we also consider the scope, history, and context of secs. 74.58 and 66.05, Stats., the relevant statutes here, in order to determine whether Greenberg, as vendor, is personally liable for the razing costs.

---

[8]The statute at issue in *Freimann,* it should be noted, did specifically define "owner" as one "having ownership, control, or custody" of the premises. Section 101.01(13), Stats. 1923.

Pursuant to sec. 66.05, Stats., cities have the authority to order the "owner" of premises upon which old or dilapidated buildings are located to raze and remove such buildings when they have become dangerous or unfit for occupancy or use. *See* sec. 66.05(1)(a). Although the order must be served on both the "owner of record" and the "holder of any encumbrance of record," *id.,* and "anyone affected by any such order" must protest within thirty days or "forever be barred" (sec. 66.05(3)), cities can only proceed to have the buildings razed and have a lien placed on the property if the "owner" fails to comply with the order. Section 66.05(2)(a). The affirmative obligation to remove the building is only on the owner and not on the lienholder or anyone else having less than ownership interest in the property.

Section 66.05, Stats., was designed to allow municipalities to act swiftly to prevent the public from "any long exposures to the risks of an unsafe or unsanitary building." *Siskoy v. Walsh,* 22 Wis. 2d 127, 130, 125 N.W.2d 574 (1963). To assist municipalities in the "battle against blight,"[9] this court has always construed this statute "to promote its purpose and to effect its object." *Appleton v. Brunschweiler,* 52 Wis. 2d 303, 306, 190 N.W.2d 545 (1971). But from the time this razing statute was enacted by the legislature in 1917, ch. 291, Laws 1917, a city's order could only be directed to the "owner" of the premises. Section 959–59(1), Stats. 1917.

Whenever a city arranges to have a building razed upon the owner's failure to do so, the razing costs are

[9]*See* Cook, *The Battle Against Blight,* 43 Marq. L. Rev. 444, 456 (1960).

charged against, and become a lien upon, the real estate "and shall be assessed and collected as a special tax." Section 66.05(2)(a). As an alternative to this method of recovering costs by attaching a lien on the property,[10] the legislature enacted sec. 74.58 in 1983 to allow a city to bring an action against the property owner to have that owner adjudged personally liable for the razing costs. *See* 1983 Wis. Act 476; 1983 Assembly Bill 302 (Analysis of Legislative Reference Bureau).

While one of the purposes of the new statute was to create an alternative mechanism for recovering razing costs, sec. 74.58, Stats., only allowed a city to proceed against a "property owner," defined in part as "[a]ny person who owns real property that is razed by a city under s. 66.05(2)." Section 74.58(1)(b)2. Referring to sec. 66.05, therefore, it is clear that sec. 74.58 only imposes personal liability on the "owner" of the razed property and not on "anyone" having an interest in the property, such as the "holder of any encumbrance of record."

The dispositive issue in this case is whether Greenberg, as a land contract vendor, "owns" the real property under sec. 74.58(1)(b)2, Stats., so that he appropriately may be held personally liable for the costs of razing pursuant to sec. 66.05(2)(a). Because Greenberg holds legal title, the City of Milwaukee argues that he has sufficient interest in the property to be considered an owner. The law of Wisconsin is to the contrary.

Applying the general principles of this court's decisions over the past seventy-five years, we hold that a land contract vendor does not "own" property for purposes of imposing personal liability under sec. 74.58, Stats. Greenberg holds bare legal title as security for the

---

[10]According to sec. 75.521(3)(a)1, Stats., a "razing" tax lien can be foreclosed upon by an action in rem if a list including the lien is filed one year after the date of the tax certificate.

43

unpaid balance. He merely has a legal interest in personal property, the purchase money owed, and not in the real estate.[11] On the date the land contract was executed, Greenberg became a lien creditor and has priority over any lien subsequently obtained by the City of Milwaukee under sec. 66.05.

Under the doctrine of equitable conversion, Eaton, the vendee, has been the beneficial owner of the property since the execution of the land contract, and as such he enjoys the rights and sustains the burdens of ownership. Because Eaton was the only owner when the property was razed, he alone is liable for the razing costs which the City of Milwaukee can collect either through a "special tax" assessment under sec. 66.05(2)(a), Stats., or through a personal judgment under sec. 74.58. Greenberg's retention of the "title stick" from the "ownership bundle" passed to Eaton does not create liability under the statute.

While we deem factually or legally distinguishable those earlier cases suggesting that land contract vendors

---

[11]In support of this proposition, Greenberg has brought to our attention a Wisconsin Administrative Code provision pertaining to the imposition of a real estate transfer fee for property sold on a land contract. According to sec. Tax 15.04(4), Wis. Adm. Code:

> Sale of a Land Contract Vendor's Interest. A deed which transfers the interest of a vendor in a land contract to another person is excluded from the provisions of s. 77.22(2), Stats. It is therefore not subject to the transfer fee. Under the doctrine of equitable conversion the vendor's interest in the land contract becomes personal property. Such a transfer is not a conveyance within the definition of s. 77.21(1), Stats., because it does not provide for the passage of ownership interest in real estate.

These Tax Code Administrative provisions are consistent with the holding of this opinion.

and vendees can simultaneously be owners, much of the language used in those decisions is inconsistent with our subsequent holdings which clearly determine the vendee to be the sole beneficial owner of the property. We emphasize that, in the case before us, Greenberg is not the owner of the property to the extent of any unpaid purchase money; for purposes of sec. 74.58, Greenberg has no ownership interests in the real property.[12]

The City of Milwaukee has also set forth a number of policy reasons why sec. 74.58, Stats., should be broadly construed to impose liability on land contract vendors. The city argues that vendors exercise de facto control over the property through the express terms of the land contract. A vendor, it is asserted, could insert a provision in the contract authorizing foreclosure in the event the vendee commits waste. According to the city, such a stipulation could have a profound impact on the likelihood of property falling into disrepair.

The city also asserts that failing to hold land contract vendors personally liable under sec. 74.58, Stats., will have a "devastating impact" on the city's ability to enforce its building codes. We are asked to take judicial notice of the fact that most of the buildings in inner city Milwaukee are very old and consequently financed, as a matter of last resort, on land contracts. Because vendees often have little invested in the property, they allegedly have little incentive to maintain the property. The city's

---

[12]The City of Milwaukee places undue emphasis on the inapplicability of sec. 66.021(1)(b), which defines "owner" as not including a vendor under a land contract. While we agree that this statutory definition is only directly applicable to the provisions of that section which govern the annexation of territory, we believe its characterization of land contract vendors and vendees merely restates those common law principles which we herein conclude apply to secs. 74.58 and 66.05.

brief pejoratively characterizes land contracts as "paper shields" which vendors use to limit their legal liability while retaining the benefit of the cash flow generated from the property.

We are not persuaded by the city's policy arguments. To the extent a vendor and vendee by contractual stipulation attempt to alter the common law rights and duties imposed upon them, such changes must be brought to the attention of the court. Our determination in this case is based on the basic assumption of this action that Greenberg and Eaton have entered into a standard land contract. To the extent a vendee normally covenants not to commit waste,[13] however, such a contract provision merely serves as evidence that the vendee, and not the vendor, exercises control over the property.[14]

We recognize that land contracts have been utilized as an instrument for the conveyance and financing of

[13]While a vendor might additionally have a common law claim against a vendee for any waste committed by the latter while in possession of the property *(see Pleasure Time, Inc. v. Kuss,* 78 Wis. 2d 373, 381–82, 254 N.W.2d 463 (1977)), we note that a typical land contract in Wisconsin might contain a provision wherein the vendee covenants, among other things, not to commit waste and to comply with all laws affecting the property. *See* State Bar of Wisconsin Form 11—1982 LAND CONTRACT, printed in MacDonald & Rauschenbusch, *supra* at 8–11. Another standard provision might contain the vendee's promise to pay all taxes and assessments levied on the property. *See id.* To the extent such provisions were set forth in the contract between Greenberg and Eaton, imposing personal liability on the vendee under sec. 74.58 would be entirely consistent with the parties' expectations.

[14]*Martin v. Scofield,* 41 Wis. 167, 171 (1876) (contract providing, *inter alia,* for the recovery of damages for waste necessarily implies that vendee has right to possession).

real property in this state at least since the time this court's decisions were printed in the Wisconsin Reports. The long history of the use of the land contract clearly indicates that the device is not intended to thwart the efforts of cities to fight urban blight. Land contracts have significant advantages for both the vendor and vendee. They are often favored by sellers due to their inherent flexibility and the ready remedy available upon a buyer's default. See *Kallenbach,* 30 Wis. 2d at 651 ff. Buyers unable or unwilling to enter conventional financing favor land contracts because of a typically low down payment requirement. To the extent both parties enter into a land contract knowing their respective rights and duties, there is no reason to alter them absent proof of an expressly fraudulent scheme affecting the public welfare.

While we must construe secs. 74.58 and 66.05, Stats., to effectuate the intent of the legislature, there is no evidence before us to suggest that imposing personal liability solely on the vendee as the property owner will have a significant impact on a city's ability to enforce its building codes.[15] Absent a statement of legislative intent, we see no reason to defeat the intentions of parties to a land contract by carving out an exception to the equitable conversion doctrine. Section 74.58 imposes personal liability on the person who owns the property razed and

---

[15]In fact, the legislative history to sec. 74.58 suggests that its provisions as a whole will not have a substantial impact. The Department of Revenue, in preparing the fiscal estimate of 1983 Assembly Bill 302, made the following observation:

> To the extent that eligible costs not currently recoverable from enforcement of a lien against property can be recovered in the manner proposed by this bill, local government revenues in cities and counties of the first class will increase. Data are not available to estimate the amount involved, but it is not expected to be large.

not on the person who at an earlier time might have allowed the property to deteriorate.

The City of Milwaukee also relies heavily on the decision of *In Matter of Foreclosure of Tax Liens,* 106 Wis. 2d 244, 250, 316 N.W.2d 362 (1982), wherein this court ruled that a land contract vendor qualified as an "owner" under the notice provisions of a statute governing the foreclosure of tax liens. In *Tax Liens,* the vendee failed to pay the real estate taxes which accrued after he purchased the property on a land contract. Accordingly, Waukesha county proceeded to foreclose its tax lien on the property under sec. 75.521, Stats. 1977. Under the notice provisions of that statute, the county had to file a list containing the names of the "last owner or owners, and the mortgagee or mortgagees" as indicated by the records of the register of deeds. *See* sec. 75.521(3)(a)2. Although the land contract had been recorded, the list failed to contain the name of the vendor. The county ultimately obtained a foreclosure judgment in its favor and the vendor, because of lack of notice, sought a vacation of the judgment. 106 Wis. 2d at 246–47.

The issue before this court in *Tax Liens* was whether the trial court could enter a foreclosure judgment when the land contract vendor was not notified of the action. The court stated that, under past cases of this court, "both the vendor and vendee have an interest in the land. The vendee becomes the equitable owner, while the vendor retains legal title to secure the balance of the purchase price. *Kallenbach v. Lake Publications, Inc.,* 30 Wis. 2d 647, 651, 142 N.W.2d 212 (1966)."

*Kallenbach,* however, in its principal rationale, and as illustrated in the very quotation above, is the antithesis of common law ownership in the vendor. *Kallenbach* makes clear that the right of the vendor is only that of a

lienholder to enforce payment of the balance of the purchase price. The vendor has a right to be paid, which is enforceable by numerous remedies. *Kallenbach,* 30 Wis. 2d at 651 ff.

*Tax Liens* merely equated the vendor's lien as being similar to the lien of a mortgagee, and hence concluded that, in the absence of notice to the vendor, the tax lien foreclosure was void. *Tax Liens* merely had the effect of protecting the personal property rights of the vendor as secured by his lien upon the property that was the subject of a land contract. *Tax Liens* merely held that, "As the holder of legal title to the property, the land contract vendor qualifies as an 'owner' *for the purposes of sec. 75.521.*" (Emphasis supplied.)

*Tax Liens* properly applied the statute to the vendor lienholder in the same manner as the statute applied to the mortgagee lienholder. However, neither the rationale of *Tax Liens* nor the cases cited in *Tax Liens* support the city's contention that a land contract vendor is to be considered an owner in situations other than the very circumstance determined in *Tax Liens.*

While a land contract vendor is not considered an "owner" for purposes of determining the legal rights and responsibilities between the vendor and vendee, where a recorded land contract is involved, vendors, as holders of legal title, are commonly considered owners for purposes of notifying them of a potential termination of their interest in the property.[16]

This court in determining the vendor to be a record owner for the special purpose at issue in *Tax Liens* was

---

[16]*See Black's Law Dictionary* (6th ed. 1990), p. 1106, which defines the term "record owner" as follows:

> This term, particularly used in statutes requiring notice of tax delinquency or sale, means the owner of record, not the owner described in the tax roll; the owner of the title at time of notice.

not unmindful of the applicable statutory provisions which required notice to record "mortgagees" as well as "owners." Sections 75.521(3)(a)2 and (3)(c). Had we found the vendor not to be an owner in *Tax Liens,* we would have been left with a statute requiring greater notice to a mortgagee than a land contract vendor, although the vendor's interests in the property can be characterized to be at least as significant as a mortgagee's. At the very least, a vendor's interest in the real property is analogous to a mortgagee's; and, as a consequence, the two were entitled to the same notice.[17]

We conclude that Greenberg as a land contract vendor does not own the property razed by the City of Milwaukee and thus is not personally liable for the razing costs.[18] Accordingly, we reverse the court of appeals decision affirming the circuit court's grant of summary judgment.[19]

*By the Court.*—Decision reversed and remanded.

---

[17]The notice provisions of the razing statute, in contrast, require service of the order on both the "owner of record" and the "holder of any encumbrance of record." Section 66.05(1)(a). Clearly, a land contract vendor fits under at least one of these classes.

[18]The City of Milwaukee has asked, if we decide the ownership issue adversely to it, that we remand for further consideration two additional questions raised in the circuit court but addressed neither in that court nor the court of appeals. Because we conclude that Greenberg is not the "owner" under the statute, as a matter of law he cannot be held liable. Accordingly, the disposition of the additional questions is irrelevant.

[19]This court, bound by the same statutory provisions as the circuit court, may find a party opposing a summary judgment motion entitled to an entry of summary judgment in that party's favor. Section 802.08(6). Accordingly, based upon the clear meaning of secs. 74.58 and 66.05, we find that Greenberg is entitled to an entry of summary judgment in his favor.

STEINMETZ, J., took no part.

LOUIS J. CECI, J. (concurring). I concur in the opinion of the court in all respects and write separately only for the purpose of expressing my concern that this opinion may be utilized by unscrupulous slumlords who would avoid their responsibility to repair and refurbish their property as ordered by the building inspectors.

Obviously this matter is one that may require hearings and action by the legislature to ensure that low-income housing remains habitable and in conformity with health department and building inspection requirements.